## GARDNER v. MICHIGAN EMPLOYERS CASUALTY CO.

BROKERS—COMMISSIONS—PRINCIPAL AND AGENT—PAYMENT — DIRECTED VERDICT.

> In an action by a stock broker for commissions on the sale of defendant's stock, for which he had been appointed "fiscal agent" for the sale of the first 2,000 shares, evidence that he appointed the secretary-treasurer of defendant as his agent to receive said commissions, appoint and pay sub-agents, etc., that said agency was never rescinded, and that all commissions due had been paid to said agent, *held*, to justify a directed verdict in favor of defendant.

Error to Ingham; Collingwood (Charles B.), J. Submitted January 19, 1921. (Docket No. 16.) Decided July 19, 1921.

Assumpsit by Earle A. Gardner against the Michigan Employers Casualty Company for commissions on the sale of stock. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*John F. Berry*, for appellant.

*Brown & Kelley*, for appellee.

STEERE, C. J.   On June 2, 1916, the then recently incorporated Michigan Employers Casualty Company opened books for sale of its capital stock and entered into a written contract with plaintiff under which it appointed him "fiscal agent for sale of the first two thousand shares."   The contract provided that plaintiff should sell defendant's stock, "either in person or by his duly authorized agents" for a commission of 15% of the selling price, which was to be $75 per share.   His 15% commission was made payable when at least 20% of the purchase price for the stock he sold had been paid in.   The commission was to cover all costs of sale, including stationery, advertising, postage, etc.   In case any subscriber for stock failed to pay the balance due on his subscription plaintiff was to re-sell the unpaid-for shares, and any commission which had been paid him thereon should be deducted from his commissions on re-sales.

The last paragraph of the contract provides:

"It is further understood that the operations of said second party as fiscal agent for the said first party shall at all times be subject to the control and supervision of said first party."

Plaintiff was at that time in the brokerage business in Detroit, but had formerly lived and was well acquainted in Lansing.   His father was probate judge of Ingham county and on organization of defendant was chosen its vice-president.   Robert K. Orr, then an employee in the office of the State accident fund, was made secretary and treasurer.

When plaintiff was selected fiscal agent to sell the specified amount of stock he made an oral agreement with Orr to and did appoint him his agent at Lansing, with the privilege of appointing and obtaining licenses

for sub-agents to sell stock. He also procured for Orr an agent's sales license "to live up to the points of the law," as plaintiff explained. Shortly thereafter Orr left the State service and they secured an office, opened books for the business and a joint bank account in their names for the agency, as plaintiff stated "to take care of the minor overhead expenses and a place to deposit and turn over the Michigan Casualty Company account proper." As plaintiff lived in Detroit where he had other business and Orr lived in Lansing, it was arranged the latter should have charge of the details and office management because, plaintiff said, as he was situated, there "had to be some arrangement of that kind" and "that program was carried on throughout."

After these preliminaries were settled plaintiff entered upon a campaign of promotion, his father and Orr co-operating in an endeavor to get prominent men interested and to sell stock. Plaintiff was in the office when in Lansing from time to time as occasion required and he desired. On such occasions he and Orr consulted together and he kept such track of the business as he cared to. Orr advised with him about employing certain men as sub-agents and other details of the business. It does not appear that there was any attempt to conceal the details from or mislead him as to what Orr was doing in the management of the selling agency. Orr procured, hired and paid all the sub-agents employed, handled the accounts, indorsed checks, paid the bills and kept a record of the stock sold. Plaintiff himself received checks on that account drawn by Orr which were applied on commissions for sales of stock made by him in person. He testified that he directly sold or aided in selling 415 shares of stock, the last sale by him being in the fall of 1916. The requisite amount of stock involved here was finally all sold or subscribed for by January

4, 1917, after which defendant was entitled to engage in the insurance business and issue policies. It appears to be undisputed that the defendant company has paid to or through the selling agency the full 15% commission on all stock sold, but differences arose and plaintiff contended he had not received the portion of net proceeds from commissions he was entitled to.

On May 22, 1919, he wrote defendant a letter from his office in Detroit making "immediate demand" for payment of $1,157.50 yet due him as commission for sale of defendant's capital stock, inclosing with the letter an itemized statement of stock actually sold by him against which a full 15% commission was charged and also stock sold in conjunction with others, claiming in some cases one-half and in others two-thirds of such commission, the items thus charged totaling the amount demanded. On August 6, 1919, he made a written demand on defendant for $19,750 balance due him on sale of the first 2,000 shares of defendant's capital stock, stating the total amount earned on a 15% commission to be $22,500 against which he gave a credit for stock and money received, reducing the same to the amount claimed. He thereafter commenced this action, declaring first by special count for $19,750 due him under the contract, and also on the common counts in assumpsit.

Defendant pleaded the general issue with special notices, in substance that the claimed indebtedness had been fully paid, the contract declared on had been mutually abandoned, and that it had been modified by mutual conduct and consent of the parties. On the trial plaintiff only urged his claim on the basis of 15% commission on stock which he personally sold or helped sell, at first contending it amounted to what he claimed in his letter of May 22, 1919, but reduced the same during his examination to $1,007.50 for

which amount he asked judgment. Defendant timely moved for and requested a directed verdict, and after argument the court tentatively took the verdict of the jury on whether plaintiff had modified or rescinded Orr's agency as to commissions for sales made by plaintiff personally. The jury rendered a verdict for the amount claimed ($1,007.50) in plaintiff's favor, which was set aside by the court on defendant's motion and judgment rendered for defendant *non obstante*.

Until after the trial was entered upon what plaintiff actually did claim was rather problematical. He had made two different written demands of defendant, one on May 22, 1919, for $1,157.50 as commissions on sales made by him personally, in whole or in part, and one on August 6, 1919, of $19,750, balance claimed due him as fiscal agent under his contract of June 2, 1916, for "fifteen per cent. on one hundred and fifty thousand dollars" of defendant's capital stock which he had sold. His declaration contains a special count on the contract and also the common counts in assumpsit. Early in the trial he filed a bill of particulars claiming $19,750 as the balance of his 15% commission "on sale of 2,000 shares of the capital stock of the Michigan Employers Casualty stock at $75 per share," less credits allowed for $200 "advanced expenses" and $2,550 for "forty shares at $75 per share after deduction of $450 commission on same." Abandoning his larger claim under the special count plaintiff reverted during the trial to the theory of his written demand of May 22, 1919, for commission upon stock personally sold by him alone or in conjunction with others.

Having abandoned his claim under the contract it became under his contention only incidental, and his insisted claim is in fact and effect based on his dealings with Orr as a representative, or agent, of the defendant company, to whom as his agent he con-

tended it had no authority to pay money for commissions on sales made by him personally.    In taking the verdict of the jury on that proposition the court said in part:

"So far as the company were concerned, it is very plain that the money was deposited in this fund, either through the checks of Mr. Gardner or checks on Robert K. Orr, with the understanding that Robert K. Orr could receive the funds as well as Earle A. Gardner. And I say, gentlemen, unless you find from the evidence and by a preponderance thereof, that at some time after the starting of this fund, Mr. Gardner rescinded that arrangement, either by his conduct or by word or by writing—and there is no evidence of any writing—notified the company of that decision, then your verdict must be no cause of action."

On subsequently reviewing the record and hearing arguments of counsel the trial court concluded that the claim of plaintiff submitted to the jury was without evidential support and fictitious, for which reason the verdict was set aside and judgment rendered for defendant as before stated.

With that conclusion we are constrained to agree. The question involved is purely one of agency.    We find no substantial evidence in the record of rescission by plaintiff of the arrangement made in the beginning when he appointed Orr his agent and left with him the management of the agency at Lansing, nor of any notice by word or conduct to the defendant company of his intention to rescind during the sale campaign.    When asked, "And who had charge in fact of the office management and details" he replied, "I left that to Mr. Orr because I knew he was going to be here with the home office.    I let him do that and such program was carried on throughout."

It is true, as plaintiff contends, that the double agency of Orr presents a disturbing feature in the transaction, but such engagements are permissible and

legal when known to and acquiesced in by both parties, as was the case here. At the time Orr was appointed agent by plaintiff and left the State employ he received no salary from defendant for his services, as it could not do business in the line it was organized for until the required amount of its capital stock had been sold. He therefore in the meantime directed his activities chiefly to the promotion and sales agency under plaintiff and, as he testified, was dependent upon his earnings there for a living during that period. He was in the beginning put and left by plaintiff in charge of the books, office and management of the sales agency. He performed those duties openly and with plaintiff's expressed or implied consent; he organized the agency, procured equipment for the office, hired and paid sales agents, received, banked and disbursed the funds belonging to the agency. As late as January 2, 1917, plaintiff received and cashed a check for $250 drawn by Orr on that account. He testified that he personally hired none of the salesmen, but names at least five whom Orr employed, and of these he said, "Mr. Orr talked it over with me, and several times at the time—he did not know whether he was going to pay them all the same or not."

In the final analysis plaintiff's direct grievance is that Orr, acting for defendant, has refused or neglected to respond to his demand for an account of the funds defendant once paid Orr as plaintiff's agent, and he now seeks to hold defendant responsible for Orr's disposition of those funds. We think it conclusively shown that this action will not lie against defendant. It may be admitted upon this record Orr's conduct does not indicate he fully appreciated the delicacy of his position under the double agency, and his strict accountability to plaintiff as his agent for all fees for commissions which came into his hands

as such, but any delinquency in that particular cannot be imputed to defendant.

We agree with the conclusion of the trial court that it is clearly shown beyond dispute defendant has paid all commissions in full to plaintiff or his authorized agent and the claim he now urges is in effect based on his dealings with his agent, Orr.   Except a payment made plaintiff in stock, defendant paid in checks payable to plaintiff or Orr, which were deposited in bank to credit of the promotion account and totaled $20,871.   What became of that fund is a matter between plaintiff and Orr.   We think the well settled rules of agency applicable to the facts shown here are in principle those applied by this court in *Plankinton Packing Co.* v. *Berry,* 199 Mich. 212.

The judgment will stand affirmed.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.   The late Justice BROOKE did not sit.