PETTINGER *v.* ALPENA CEDAR CO.

1. APPEAL AND ERROR—EXCEPTIONS—TRIAL—REVIEW.
    Proper exceptions as well as a request for a ruling of the
    trial court are essential to review argument of counsel
    for the prevailing party on writ of error.

2. SAME—NEW TRIAL.
    The denial of a motion for new trial is not reviewable
    unless the reasons for such ruling are demanded or se-
    cured in the lower court.

3. EVIDENCE—CONTRACTS—CREDIT GIVEN.
    On the trial of an action for supplies furnished to one party
    on the credit of another, it was not erroneous to permit
    plaintiff's counsel to inquire of a witness for plaintiff, to
    whom was credit extended.

4. PRINCIPAL AND AGENT—ESTOPPEL—HOLDING OUT PERSON AS
    AGENT—SUFFICIENCY OF EVIDENCE.
    Acts of an alleged principal during a long course of deal-
    ing or many successive transactions, recognizing the
    authority of another to act in the principal's behalf, may
    raise against him an estoppel to deny the existence of
    an agency as to persons who have dealt with the agent
    in reliance on his apparent authority.

5. SAME—EVIDENCE OF ESTOPPEL.
    Testimony on plaintiff's behalf that he furnished supplies
    to a lumbering contractor at the request of one who
    assumed to act as agent for defendant corporation, direct-
    ing plaintiff to present the account to defendant and it
    would be paid, that one account was approved by the
    alleged agent and was paid by defendant, that plaintiff
    believed that such agency existed and acted in reliance
    on the payment of the one account and on the fact that
    defendant had furnished the same person with blank
    orders to pay laborers in the contractor's employ and such
    orders were honored by the corporation, that it had also
    delivered to him a check payable to his order and plain-
    tiff had received the check on the account in litigation,
    presented a question for the jury on the ground of an
    agency by estoppel. STONE and OSTRANDER, JJ., dissenting.

Error to Montmorency; Emerick, J. Submitted November 15, 1911. (Docket No. 125.) Decided May 28, 1913.

Assumpsit by John Pettinger against the Alpena Cedar Company for goods and supplies furnished to another on defendant's credit. Judgment for plaintiff. Defendant brings error. Affirmed.

*Elmer G. Smith, O'Brien & Francis,* and *L. G. Dafoe,* for appellant.

*I. S. Canfield,* for appellee.

BIRD, J. While one James H. Wade was lumbering certain lands in Montmorency county in pursuance of a contract with H. K. Gustin, of Alpena, he purchased his camp supplies from the plaintiff, who kept a general store at Atlanta. In January, 1907, the account had increased to $366.99, at which time plaintiff advised Wade that he could not carry him for a larger amount, and that he would have to make some arrangements about making payment of it. Wade then appealed to Gannon for assistance. Soon after this, Gannon, who had charge of Gustin's lumbering interests in the woods, came to plaintiff's store and approved the account and ordered plaintiff to send it to the Alpena Cedar Company and it would be cashed. Plaintiff complied with the suggestions and received a check from the Alpena Cedar Company for $366.99 in payment of the account. After Gannon approved this bill, he inquired of Wade if he intended to continue trading with plaintiff, and, upon being assured by Wade that he so intended, Gannon said to plaintiff:

"You will supply Mr. Wade with camp supplies such as he needs to go on and from time to time I will be here. I will be here oftener than I have been and I will O. K. these bills and you may send them to the company and get your money."

Following this conversation, and up to the latter part of March, plaintiff continued to furnish Wade with supplies, but charged them directly on his books to the defendant company. About this time some differences arose between Wade and Gustin, which resulted in severing Wade's connection with the work. Up to this time the plaintiff had furnished Wade with supplies aggregating the sum of $405. The bill was approved by Wade and sent to the defendant, but was returned unpaid.

It was shown by the testimony that Wade was furnished two books containing blank labor orders of the Alpena Cedar Company, which were used by him in making payment of labor and other accounts, and that they were honored by defendant. Some of these orders were purchased by plaintiff from the men employed, and they were honored by the defendant. The defendant denied that it had any interest in the contract; that it was entirely a matter of Mr. Gustin's; and denied that Mr. Gannon had any authority to bind the company for camp supplies or anything else. There was no proof that Gannon had any actual authority from the defendant to do what he did, but it was the claim of the plaintiff that defendant's course of dealing with matters connected with the contract misled him into the belief that the defendant was interested in the contract and that Gannon was acting for it, and that by reason of such belief he was induced to part with his goods.

At the close of the testimony, the defendant requested the court to direct a verdict in its behalf, but, instead of so doing, the court left the question to the jury and instructed them in part as follows:

"If you believe from the evidence in the case, by a fair weight and preponderance of the evidence, that the transactions which I have enumerated would have produced in the mind of a man of ordinary intelligence, of fair decent business ability, and did produce

in the mind of John Pettinger the belief that the Alpena Cedar Company was connected in some way with this transaction, in reference to the Wade lumbering job, so that they were willing to, in part at least, pay the bills for the expense of that job, and that this man Gannon, who had been connected with the job as the overseer and agent of Mr. Gustin, had its authority to promise to pay for the goods that should be furnished in the future, and that Mr. Gannon did so promise, did actually promise that for the goods which should be furnished in the future this company would pay, then the company would be liable for those goods that were thereafter furnished."

The jury returned a verdict for the plaintiff for the amount of his claim, and the defendant has assigned several errors in this court growing out of the rulings of the trial court in the admission and rejection of testimony; also on prejudicial remarks of counsel in the presence of the jury; also on the refusal of the court to direct a verdict in its behalf and on the refusal of the court to grant a new trial.

For the want of proper exceptions, and for the failure of defendants to secure a ruling upon its objections to the language of counsel, and for its failure to secure the reasons of the trial court for refusing a new trial, the only questions which can be considered upon this record are the following:

(1) Was it error to permit the following question to be answered on behalf of plaintiff: "Who did you extend credit to after that time?" (2) Was the trial court in error in refusing to direct a verdict for the defendant?

1. The plaintiff was seeking to hold defendant liable for merchandise which he delivered to another, and it was not only a pertinent but a proper inquiry as to whom he extended the credit. No error is apparent in its admission.

2. Inasmuch as there was no proof that Gannon had any actual authority to act for the defendant,

the question here raised is one of agency by estoppel. 31 Cyc. p. 1219. This rule has been stated as follows:

"It is a general rule that when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent either generally or for a particular purpose, he will be estopped to deny such agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances. This rule is particularly true where the principal has knowingly by such acts and conduct recognized the agency through a long course of dealing or in many transactions." 13 Cyc. p. 1237.

In *Clark* v. *Dillman*, 108 Mich. 625 (66 N. W. 570), it was said:

"It is undoubtedly the law that a person may be bound by the representations and acts of another, as agent, where there has been such a holding out as to reasonably lead one dealing with him to believe in the existence of such agency. But all of the elements of an estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justify the claim that the alleged principal should have expected that the representations would be relied and acted upon; and, further, it must appear that they were relied and acted upon, in good faith, to the injury of an innocent party."

The plaintiff claims to have parted with his merchandise in the belief that the defendant was interested in the lumbering which Wade was carrying on, and that Gannon was acting for it, and that it would pay for such supplies as he furnished the camp. This belief was induced by the fact that Gannon had approved of an account which he held against Wade, and the defendant had paid it as he was advised by Gannon it would do. Another thing which tended to strengthen this belief was the fact that Wade had been furnished blank labor orders of the Alpena Cedar Company, and the men were being paid with them. Plaintiff bought some of these orders, and he

knew of others who had bought them, and he knew that these orders were honored by the defendant. A check for $100, drawn by the Alpena Cedar Company to the order of Gannon and indorsed by him to Wade, was accepted by plaintiff as a payment on Wade's account, and this check was honored by the defendant. This incident, in connection with the other evidence, helped to confirm the belief of plaintiff that Gannon was acting for the defendant. The testimony showed that some notice was brought home to plaintiff that Gustin was interested in the contract, but this notice was not very significant to plaintiff because of the fact that he knew that Gustin was president of the defendant company.

The case was a close one, but we think the testimony presented an issue for the jury. The trial court submitted the issue in a very clear and able charge, and we think the verdict was justified if the jury believed the testimony offered on behalf of plaintiff.

The judgment of the trial court is affirmed.

STEERE, C. J., and MOORE, McALVAY, and BROOKE, JJ., concurred with BIRD, J.

OSTRANDER, J. *(dissenting)*. It is the general rule, apparently often forgotten, that:

"Every person dealing with an assumed agent is bound, at his peril, to ascertain the nature and extent of the agent's authority. The very fact that the agent assumes to exercise a delegated power is sufficient to put the person dealing with him upon his guard, to satisfy himself that the agent really possesses the pretended power. If, having relied upon it, he seeks to hold the alleged principal responsible, he must be prepared to prove, if either be denied, not only that the agency existed, but that the agent had the authority which he exercised." Mechem on Agency, § 706.

In this case it is not pretended that the agent Gannon had defendant's authority to pledge its credit for goods to be furnished by plaintiff to a third person,

or that he was a general agent of defendant. There is no testimony tending to prove that defendant had knowledge that Gannon had ever before done such a thing, or knew that he did it in the particular instance. There is no testimony tending to prove that Gannon had ever before assumed any such authority. There is therefore no evidence of the authority alleged to have been assumed by Gannon; no evidence that his principal knew that he had assumed the authority; no ratification of the particular, or of any similar, act.

The judgment should be reversed and no new trial ordered.

STONE, J., concurred with OSTRANDER, J.