PLANKINTON PACKING CO. *v.* BERRY.

1. EVIDENCE—ADMISSIBILITY—CARBON COPIES OF LETTERS.
   - Carbon copies of letters are inadmissible, because not best evidence, where no showing is made of demand upon the adverse party to produce the originals.

2. APPEAL AND ERROR—WEIGHT OF EVIDENCE—REVIEW—STATUTES.
   Where proper exceptions are taken to written findings of fact by a trial judge on the ground that they are against the clear weight of the evidence, in accordance with the provisions of the judicature act, Act No. 314, Pub. Acts 1915, chap. 18, § 15 (3 Comp. Laws 1915, § 12857), and error assigned thereon, such findings will be reviewed by the Supreme Court.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—ESTOPPEL.
   A mother who issues blank checks to her son, who; is running a meat market, for a period of several months, receives letters from the meat packers, knows that the checks were to be used and were actually used in the business of the meat market, fails to examine the letters or paid and canceled checks as returned to her by the bank, is estopped to deny the authority of the son to act as her agent and to make purchases on her credit.

Error to Emmet; Shepherd, J. Submitted October 23, 1917. (Docket No. 116.) Decided December 27, 1917.

Assumpsit in justice's court by the Plankinton Packing Company against Alice Berry for goods sold and delivered. There was judgment for defendant, and plaintiff appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Reversed.

*Mesick & Miller,* for appellant.

*Wade B. Smith,* for appellee.

It is sought to recover the price of two shipments

of meat, consigned by plaintiff to defendant upon the
order of one Roy Berry. The goods were invoiced at
$193.13.

Plaintiff is a corporation, conducting a wholesale
meat business at Milwaukee, Wis. In May, 1914, de-
fendant's son, Roy Berry, bought out a retail meat
business in Petoskey, which he conducted from that
time until early in October of the same year, when
he failed. About the time the market was opened,
the defendant, Alice Berry, a resident of Petoskey,
gave her son $200 to put into the business. He was
then about 31 years of age, and was not residing
with his mother, but was married and maintaining a
home of his own. Upon receiving the $200, he at
once opened a checking account with a local bank
under the designation of "Alice Berry, Shop Account."
Defendant did not know of this arrangement in ad-
vance; but, immediately after opening the account,
Roy told her what he had done, and explained that it
would be necessary for her to sign the checks. To
her inquiry why he had put the account in her name,
he merely replied: "Well, it's all right; you can check
it out." And she let it stand that way without pro-
test. Within a few days defendant began to receive
letters bearing the return card of various wholesale
meat firms. She testified that she did not open these
letters, but sent for her son and asked for an expla-
nation, saying it did not look right for letters to come
in her name from meat firms, and that he replied:

"That is all right. Don't worry about that at all.
That money was in your name and you have to sign
those checks. Now that is all there is to it. There
is nothing out of the way with it."

She claims that nothing further was said about the
matter, and that she continued to turn over to him
all letters from meat firms that came addressed to her,
without opening them and without further inquiry.

The checks on the bank account were, according to defendant's testimony, signed by her in blank and delivered to her son. She claims she did not know the amounts of the checks, nor to whom they were to be made payable. She admits that the canceled checks were returned to her by the bank, but states that she burned them without examining them to see how they had been filled out.

Plaintiff's salesman, William Schroeder, called at the meat market every week and took orders for meat, and the goods ordered through him were shipped by plaintiff, consigned and invoiced to Alice Berry, and were obtained from the carriers by Roy Berry. Mr. Schroeder collected each week from Roy Berry the amount due for goods received by him the preceding week, as per terms of the orders, and the payments were made by checks signed "Alice Berry, Shop Account," and delivered to Schroeder by Roy Berry. Mr. Schroeder testified that occasionally the check was not ready when he came, and that he would wait while Roy went over to his mother's to get a check signed. Defendant claims she had no knowledge that any goods were being purchased in her name or upon her credit, nor that Roy Berry was dealing with plaintiff.

Before the account was opened with Mrs. Berry, plaintiff, through its credit manager, made the usual investigations as to the identity and responsibility of defendant, and upon the basis of the information obtained extended credit to her, and to her alone. Neither prior to nor during the continuance of these dealings did plaintiff ever inquire of defendant herself as to the authority of Roy Berry to order goods shipped in her name and upon her credit. Mr. Schroeder testified he never saw Mrs. Berry nor had any conversation, writing, or correspondence with her, though she continued to reside in Petoskey during the entire period of these transactions. All goods ordered by

Roy Berry of plaintiff were paid for, except those which came in the two shipments in question, which, together, represent the last order Berry gave. When Schroeder arrived in Petoskey the week after this order was given, he found that Berry had failed and that the market was closed. This was in the early part of October, 1914. He saw Berry, however, and asked him on several occasions to pay for these goods, and Berry said that he would take care of it.

Suit was brought by plaintiff against Alice Berry before a justice of the peace, who rendered judgment in favor of defendant, and upon appeal the trial in the circuit court, without a jury, resulted in a like judgment.

KUHN, C. J. (*after stating the facts*). The appellant raises questions concerning the ruling of the court as to the admissibility of certain evidence. A part of the testimony in support of plaintiff's case was taken by deposition, and it was sought to introduce in evidence two carbon copies of letters purporting to have been written by the plaintiff to the defendant asking for payment. The court properly refused to receive these two exhibits for the reason that they were not the best evidence, no showing having been made of any demand upon the defendant to produce the originals.

Question is also raised concerning the refusal on the part of the court to admit plaintiff's Exhibit D, which was a letter written by the plaintiff's agent to his concern asking them to get a commercial report on Mrs. Berry and advising them that she was about to start in business. It is claimed that this exhibit should have been admitted for the purpose of showing to whom the plaintiff extended credit. We do not think it necessary to consider this question, because, under the undisputed proofs, the credit was extended by the plaintiff to the defendant.

This case was tried before the court, and the learned trial judge at the conclusion of the hearing made written findings of fact and of his conclusions of law. To these findings counsel for the plaintiff took exception that they were against the clear weight of the evidence, in accordance with the provisions of section 15, chap. 18, Act No. 314, Pub. Acts 1915 (judicature act, 3 Comp. Laws 1915, § 12587). In accordance with the provisions of that act, proper exceptions having been taken and error assigned thereon, we will review these findings.

The judge made the following finding:

"There is no evidence in this case of anything said or done by defendant, with knowledge on her part that plaintiff might be led to rely thereon, tending to show that Roy Berry had authority to buy any goods in her name or upon her credit."

With this conclusion we cannot agree, because we are of the opinion that this record discloses that the defendant, by her course of conduct, permitted it to appear that her son was her agent for the purpose of conducting this business, and, because of her conduct in relation thereto, she is estopped to deny such agency to the injury of the plaintiff, who in good faith and, as we believe, in the exercise of reasonable prudence, dealt with the agent on the faith of such appearances. The issuing by her of the blank checks over a period of several months, the receipt of letters from the meat packers, the knowledge that the checks were to be used, and were used, in the business of the meat market, and the failure of the defendant to examine the letters or the paid and canceled checks as returned to her by the bank, was such a course of conduct on her part, in our opinion, as to force the legal conclusion that her authority to her son to act for her as agent would be conclusively presumed so far as it may be necessary to protect the rights of the plaintiff, who

relied thereon in good faith and in the exercise of reasonable prudence.

The general rule is thus stated by Mr. Mechem, in his work on Agency, Vol. 1 (2d Ed.), § 246, in discussing this question, where it is said:

"Gathering together all of these elements, it may be stated as a general rule that whenever a person has held out another as his agent authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in that capacity, or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent authorized to act in that capacity—whether it be in a single transaction or in a series of transactions—his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent authorized to do the act he assumed to do, provided that such act was within the real or apparent scope of the presumed authority."

The principle here involved was recognized by this court in the recent case of *Pettinger* v. *Alpena Cedar Co.*, 175 Mich. 162 (141 N. W. 535), in which opinion the case of *Clark* v. *Dillman*, 108 Mich. 625 (66 N. W. 570), is referred to.  See, also, the earlier case of *Heyn* v. *O'Hagen*, 60 Mich. 150 (26 N. W. 861).

Upon this record the circuit judge should have entered a judgment for the plaintiff for the amount of its claim.  The case will be reversed, and a new trial granted, with costs to the appellant.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.