REICHERT *v.* STATE SAVINGS BANK OF ROYAL OAK.

PETITION OF DETROIT HUME PIPE CO.

1. PRINCIPAL AND AGENT—BILLS AND NOTES—INDORSEMENT—CHECKS
   —AUTHORITY OF AGENT.

   Authority of an agent to indorse check may be established the
   same as in any other case of agency (2 Comp. Laws 1929,
   § 9268).

2. SAME—ESTOPPEL—CHECKS.

   In proceedings by corporate payee against bank to recover pro-
   ceeds of check which had been received from former's debtor,
   indorsed and proceeds misappropriated by payee's vice-presi-
   dent, director and sales manager without written authority to
   indorse of record, indorsement *held,* valid where in accordance
   with practice acquiesced in by payee and reasonably relied
   upon by bank for period of two years (2 Comp. Laws 1929,
   § 9268).

3. SAME—ESTOPPEL.

   Agency may be established by an estoppel to deny the existence
   of such an agency by persons who, through their conduct,
   have given others reason to believe that such agency exists.

4. SAME—BILLS AND NOTES—CORPORATIONS—ESTOPPEL.

   In proceedings to recover from bank proceeds of check which
   had been misappropriated by corporate payee's agent, payee
   *held,* estopped to deny authority of such agent who was its
   vice-president, director and sales manager, to indorse its
   checks where practice of doing so was apparent, under the
   circumstances, and had been followed for two years (2 Comp.
   Laws 1929, § 9268).

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted October 22, 1935. (Docket No. 124, Calendar
No. 38,660.) Decided January 6, 1936.

Receivership proceedings by Rudolph E. Reichert,
State Banking Commissioner, against the State Sav-

ings Bank of Royal Oak.   On petition of Detroit
Hume Pipe Company, a Michigan corporation, for
allowance of a claim arising out of the indorsement
and depositing of a check payable to petitioner.
Order entered allowing claim.   On rehearing of peti-
tion, decree entered denying petition.   Petitioner
appeals.   Affirmed.

*Yerkes, Goddard & McClintock* (*Shirley T. John-
son,* of counsel), for petitioner.

*Fletcher L. Renton,* for receiver.

BUTZEL, J.   In 1930 and for a number of years
previous thereto, James B. Dunkel was the vice-
president, director and sales manager of petitioner
Detroit Hume Pipe Company, with whom he had
been associated from the time of its organization in
1925.   W. Dean Robinson had been an officer of the
pipe company since 1925 and was its president in
1929.   He and his father owned over one-third of the
capital stock.   In 1921, Mr. Robinson and his father
purchased a controlling interest in the Mellen-
Wright Lumber Company of Royal Oak, Michigan,
and have been officers and directors ever since.
James B. Dunkel was elected secretary, treasurer
and director of the lumber company as well as its
manager.   Dunkel seemed to have considerable con-
trol in the management of the lumber company, and
apparently enjoyed the fullest confidence of the offi-
cers and directors of both companies, in which he
held important offices.   When the pipe company was
organized, the lumber company became its sole sell-
ing agent, but subsequently almost all of the sales
were made without the latter's aid, although Dunkel
continued to be the sales manager as well as vice-
president of the pipe company.   In the year 1929 and

for several years previous thereto, after sales were made by the pipe company to its customers, statements were brought to Dunkel's office in the lumber company in Royal Oak where they were checked, stamped with a rubber stamp directing that checks be mailed to the company to 500 South Main street, Royal Oak, the address of the lumber company, and mailed out to the debtors. The larger part of the remittances to the pipe company were thus sent to Dunkel at the lumber company's office in Royal Oak. Many of the checks thus received were forwarded to the pipe company after being checked off on Dunkel's copy of the statements. Others, however, were deposited to the credit of the lumber company by Dunkel, the vice-president of the pipe company. Dunkel states that this was done so that advancements made by the lumber company for the pipe company could be deducted from these checks received in payment of indebtedness due the pipe company. After these checks were received by the lumber company, and deposited to its own credit, it sent its check for the balance to the pipe company together with a letter of explanation, stating on what accounts of the pipe company this represented payment. In the period from December 14, 1927, to December 9, 1929, over $300,000 was sent in this manner by the lumber company to the pipe company, representing checks received by the lumber company, payable to the pipe company, and deposited by the lumber company to its own credit. On December 9, 1929, Dunkel received from a large customer a check made payable to the pipe company in the amount of $30,000. He first had the check certified and then undertook to collect it in cash from some other bank. The check shows that it first bore an indorsement which was erased and is now illegible. Then Dunkel, following the practice that he had pursued for almost two

years, if not longer, indorsed the check "Detroit Hume Pipe Company, J. Dunkel, vice president," and deposited it in the usual manner to the credit of the lumber company. The proceeds of this check, however, were never remitted, but Dunkel caused it to be credited to his personal account on the books of the lumber company. He had overdrawn or misappropriated a very large sum of money from the lumber company and in this manner tried to cover up his defalcations. When Mr. Robinson noticed that the $30,000 account remained unpaid on the company's books, Dunkel represented to him that it had not been collected. Nearly a year later, the true facts were ascertained. Demand was made upon the bank for the amount of the check, on the ground that the bank had collected the check and had paid the proceeds to one who had no title to the instrument, there having been no proper indorsement by the payee, the pipe company. Dunkel was discharged by the pipe company, but an agreement was entered into by him and the pipe company by which he turned over to the latter his life insurance. He was also permitted to continue to act as sales agent of the company on a commission basis, he agreeing to turn over part of the commissions in liquidation of what he owed. In a case brought by the banking commissioner against the State Savings Bank of Royal Oak, Harry Gross was appointed receiver. The Detroit Hume Pipe Company filed a petition asking that it be allowed a claim of $30,000. The petition was at first granted, but subsequently denied. The pipe company as petitioner has appealed from the order denying its claim.

The financial management of the pipe company as far as it related to the signing and indorsing of checks seems to have been carried on in a very careless manner. The by-laws contained no specific pro-

visions governing the signing or indorsing of checks. The only resolution of the board, prior to 1930, authorizing the signing and indorsing of checks is dated October 24, 1928, and gives H. E. Hund and W. D. Robinson such authority. Hund resigned in 1929 so that if the authority were a joint one, there would be no one authorized, either by the by-laws or action of the board, to sign and indorse checks. If Robinson alone could indorse them, the query arises, whether anyone could indorse checks in his absence, or whether the vice-president could indorse in the absence of the president? The president was absent during part of 1930 and also for a short period during the latter part of 1929. It is argued that the facts show an implied agency in Dunkel to indorse and that consequently the particular indorsement in the instant case was valid. It is unnecessary to discuss this question and many others raised, as there was a valid indorsement in the instant case, its validity being established by an agency by estoppel in Dunkel. Section 21 of the negotiable instruments law of Michigan (2 Comp. Laws 1929, § 9268) provides as follows:

"SEC. 21. The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

In *Quinn* v. *Quinn Manfg. Co.*, 201 Mich. 664, 668, we held:

"We think that the authority to execute this note may be fairly implied from the continued exercise of the power and from the holding out to the business world of the officer as being invested with such power. 2 Thompson on Corporations (2d Ed.), § 1564. The continued exercise by Quinn of the

power to execute notes, with the apparent acquiescence of the board of directors, now estops the defendant, under the rule above stated, from questioning his authority in this respect.''

Notwithstanding the fact that Mr. Robinson, the president of the corporation, testified that he did not know of this practice, it seems incredible to believe that others connected with the pipe company's business would not have realized that when large payments, aggregating $300,000, were made to the lumber company on pipe company accounts without the accounts being assigned to the lumber company, Dunkel or someone else in the lumber company must have been indorsing checks. The inference is impelling that officials of the pipe company acquiesced in the practice of the checks being indorsed and placed to the credit of the lumber company and then subsequently accounted for to the pipe company. That there was a reasonable reliance by the bank upon the practice acquiesced in by the pipe company cannot be doubted. An ordinarily prudent person, standing in the position of the bank under these circumstances and with the practice continued for such a length of time would have ample reason to believe that the indorsements were regular and made by one authorized to make them. Agency may be established by an estoppel to deny the existence of such an agency by persons who, through their conduct, have given others reason to believe that such agency exists. *Clark* v. *Dillman,* 108 Mich. 625; *Pettinger* v. *Alpena Cedar Co.,* 175 Mich. 162; *Plankinton Packing Co.* v. *Berry,* 199 Mich. 212; *Quinn* v. *Quinn Manfg. Co., supra.*

Dunkel took advantage of the confidence which was placed in him. The pipe company unquestionably overlooked important details of their business

and left them to Dunkel in whom they reposed their confidence. This is likewise true of the lumber company. This may have been the reason for their not observing what was so apparent, that their checks were being cashed by the indorsement of someone at the office of the lumber company, obviously Dunkel, the vice-president of the pipe company. The pipe company after the practice had been going on for such a length of time is estopped from disclaiming Dunkel's agency.

The order of the trial court in denying petitioner's claim is affirmed, with costs to appellee.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and POTTER, JJ., concurred.

The late Justice NELSON SHARPE took no part in this decision.