ATLANTIC DIE CASTING COMPANY *v.* WHITING
TUBULAR PRODUCTS, INC.

1. PRINCIPAL AND AGENT—APPARENT AUTHORITY.
    A principal is bound by his agent's acts which have not been
    actually authorized, where the principal cloaks the agent with
    apparent authority.

2. SAME—APPARENT AUTHORITY—QUESTION FOR JURY.
    The apparent authority of an agent to act as the representative
    of his principal is to be gathered from all the facts and cir-
    cumstances in evidence and ordinarily is a question of fact for
    the jury.

3. SAME—APPARENT AUTHORITY.
    Persons dealing with an agent may rely on his apparent authority
    and such authority is to be gathered from all of the facts
    and circumstances properly admitted in evidence.

4. SAME—APPARENT AUTHORITY—ESTOPPEL.
    The principal is estopped from denying his agent's authority to
    perform an act whenever the principal has placed the agent in
    such a situation that a person of ordinary prudence, conversant
    with business usages and the nature of the particular business,
    is justified in assuming that such agent is authorized to perform
    it in behalf of the principal, and such particular act has been
    performed.

5. SAME—POWERS OF AN AGENT.
    Generally, the powers of an agent are prima facie coextensive
    with the business intrusted to his care.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3, 4] 2 Am Jur, Agency §§ 101, 102.
[5] 2 Am Jur, Agency §§ 86, 87.
[6, 7] 2 Am Jur, Agency § 104.
[8, 9] 55 Am Jur, Vendor and Purchaser § 779.
[10] 22 Am Jur, Fixtures § 2.
[11] 22 Am Jur, Fixtures § 55.

6. Same—Apparent Authority—Estoppel.

Agency may be established by an estoppel to deny the existence of such an agency by persons who, through their conduct, have given others reason to believe that such agency exists.

7. Same—Apparent Authority of Real Estate Agent—Estoppel.

Principal which accepted the benefit of the apparent agency of real estate agent in the sale of real estate was thereafter estopped to deny such agency.

8. Vendor and Purchaser—Good Faith—Gas Space-Heating Contract—Question of Fact.

Whether or not plaintiff purchaser of real estate was a purchaser in good faith as to vendor's intention to retain and transfer its gas space-heating contract with the gas company which was unable to take on additional customers *held,* a question of fact under evidence presented.

9. Same—Good Faith—Gas Space-Heating Contract—Evidence.

Trial court's finding that plaintiff was a purchaser in good faith insofar as retention of gas space-heating service contract was concerned *held,* not error under record presented, as the evidentiary value of the testimony of witnesses is a matter for the trial court to evaluate.

10. Same—Fixtures.

Generally, whatever is affixed to a building by an owner to facilitate its use and occupation becomes a part of the realty and passes with it under a deed.

11. Same—Gas Space-Heating Equipment—Possession—Evidence —Reservations.

Gas space-heating equipment, necessary to the purpose to which the realty was adapted, became a fixture upon its annexation to the property and the right to possession thereof, which determined the right to the gas service, passed to the purchaser under deed which failed to reserve it to the vendor upon finding by trial court that plaintiff was a purchaser of such right in good faith and such finding was supported by evidence.

Appeal from Wayne; Culehan (Miles N.), J. Submitted June 5, 1953. (Docket No. 64, Calendar No. 45,878.) Decided October 5, 1953.

Bill by Atlantic Die Casting Company, a partnership, against Whiting Tubular Products, Inc., and

Michigan Consolidated Gas Company, Michigan corporations, to determine plaintiff's right to space-heating contract.   Decree for plaintiff.   Defendant Whiting Tubular Products, Inc., appeals.   Affirmed.

*Samuel Grandon* and *Sol J. Schwartz,* for plaintiff.

*John R. Monaghan* (*William J. Mullaney,* of counsel), for defendant Whiting Tubular Products, Inc.

*Dyer, Angell, Meek & Batten* (*A. D. Ruegsegger,* of counsel), for defendant Michigan Consolidated Gas Company.

SHARPE, J.   This is a chancery action to determine which of 2 customers is entitled to a single space-heating service contract as the Michigan Consolidated Gas Company can only furnish gas for heating purposes to 1 of the 2 claimants.   The facts are very much in dispute.   The record shows that in the spring of 1951, Whiting Tubular Products, Incorporated, operating at 17740 Clairann avenue, Melvindale, Michigan, were planning on building a larger plant.   Whiting Tubular Products, Incorporated, for some time had a space heating contract with the gas company at its Clairann plant.   Plans for the new plant, to be located on Allen road, were prepared by Arthur Grieg, an architect.   These plans called for oil heat.   These plans were revised on July 24, 1951, and August 14, 1951, and provided for an extension of 20 feet on the length of the new plant, and elimination of the plans for oil heat and boiler room.   The plans, as revised, were turned over to August Kolstad sometime prior to September 25, 1951.   Construction of the new building had begun prior to September 25, 1951, although the construction contract between August M. Kolstad and Whiting Tubular Products, Incorporated, was not actually entered

into until September 27, 1951. Prior to that time, August M. Kolstad had dug the foundation and poured the footings under an arrangement that, if he did not get the contract, he would be paid for work performed.

In March or April, 1951, Gerald C. Burns, a real estate salesman, employed by Hubbard Associates, discussed with Whiting Tubular Products, Incorporated, the sale of their old building on Clairann avenue; and about May 10, 1951, Gerald C. Burns and August M. Kolstad had a conversation with Richard Whiting, secretary of Whiting Tubular Products, Incorporated, concerning the sale of the old building. Following these conversations, and on July 15, 1951, Gerald C. Burns caused to be inserted in Detroit newspapers advertisements offering for sale the old building and described same, "gas heat, knotty pine offices." Sometime prior to August 14, 1951, Samuel S. Portner, one of the partners of Atlantic Die Casting Company, after a conversation with Burns, visited the Clairann building and was permitted to inspect it.

On September 25, 1951, Burns offered Atlantic Die Casting Company a preliminary agreement relative to the sale of the property, which agreement contained the following:

"Whiting Tubular Products to remain rent free in this building for a period of 60 days from the date of closing, and to pay a rental of $600 per month thereafter. In no event shall they remain in possession longer than 90 days from the date of closing. All gas, water, bus ducts and fuse boxes to be left intact on the premises, except leads to special purpose equipment.

"All taxes, water, insurance, etc., shall be prorated as of the date possession is given to purchaser, if before the end of 60 days. If occupancy continues

after 60 days, then seller is to pay prorate share for 60 days."

On September 25, 1951, Simon Slutsky signed the offer in behalf of Atlantic Die Casting Company, and on September 28, 1951, August M. Kolstad signed the acceptance as seller of the premises. It appears that prior to September 28, 1951, August M. Kolstad became the title owner of the building. On November 8, 1951, a deed dated September 10, 1951, from Whiting Tubular Products, Incorporated, to August M. Kolstad was recorded in the office of the register of deeds for Wayne county. On October 29, 1951, August Kolstad delivered a warranty deed to Atlantic Die Casting Company, but Whiting Tubular Products, Incorporated, kept possession of the plant until February or March, 1952. Early in December, 1951, Atlantic Die Casting Company learned that there was some question as to their being able to have gas for heating services in the building. On January 26, 1952, they filed their bill of complaint for the purpose of enjoining the gas company and Whiting Tubular Products, Incorporated, from discontinuing gas service or removal of the gas-heating services. The trial court found that Atlantic Die Casting Company purchased the building in good faith without notice of any reservations, and that the purchase included the gas-heating unit and the right to be furnished gas for heating purposes. A decree was entered restraining the gas company from discontinuing the furnishing of gas for space-heating purposes to Atlantic Die Casting Company. It is the position of the gas company that on October 4, 1951, Whiting Tubular Products, Incorporated, contacted the gas company concerning the possibility of transferring its gas service from the old to the new plant, which was then in the process of construction; that the application was processed in the

regular manner; that on October 11, 1951, an employee of the gas company investigated both plants for the purpose of checking the size of each building to determine if an increase of gas would be necessary for the new building; that on October 17, 1951, the transfer of the heating equipment was authorized and Whiting Tubular Products, Incorporated, notified of the same; and that they have no interest in the controversy except that they cannot furnish gas for heating purposes to both buildings.

Whiting Tubular Products, Incorporated, appeals and urges that Gerald C. Burns, of Hubbard Associates, and August M. Kolstad were not agents of Whiting Tubular Products, Incorporated. The trial court held that Burns and Kolstad were agents of Whiting Tubular Products, Incorporated, and permitted their cross-examination under the statute (CL 1948, § 617.66 [Stat Ann § 27.920]). Gerald C. Burns, called as a witness for plaintiff, testified:

"I was the real estate agent who secured the Atlantic Die Casting Company as purchasers on the building on Clairann avenue in Melvindale which is the basis of this law suit. I did not represent the Atlantic Die Casting Company; I represented the seller. I first discussed with the Whiting Tubular Products Company the sale of their old building and perhaps the building of their new building back in March or April, 1951. * * * Sometime in May, August M. Kolstad and I visited them and presented a building proposition whereby we would take their old building in on trade and build them this brand new building that the drawings had been prepared for by Arthur Grieg. * * *

"*Q.* Yes: The only thing is that according to Grieg Associates these plans were not ready until May 17th.

"*A.* Well, it is approximately that time. I mean so far as the actual date. I got one on the 4th of May, the 10th of May. That is when I talked to Dick

Whiting. The exact proposal I made in regards to the old building and the new building was that Kolstad would build a brand new building and take the old building in trade. The old building was to go in escrow and Kolstad could sell the old building prior to the completion of the other building. \* \* \*

. "The purpose of this transaction, of the trade-in, instead of a direct sale by Whiting was that on a direct sale of the old building there would have been a capital gain. Trading the old building in, why, they got around that. This purpose was discussed by me with the Whitings. I had that discussion with the Whitings before any deal was consummated. \* \* \*

"I was not told at any time by any member of the Whiting Tubular Products that the new building was to have oil heat, but the drawings indicate that. There was not anything in the transfer of the old property by deed, nor was there any reservation set up for the gas heat to be transferred to the new building.

"*Q.* You were never told by the Whiting Tubular Products that the gas heat would be expressly excluded in their transfer of it?

"*A.* No."

The record shows that in May, 1951, Gerald C. Burns visited Whiting Tubular Products, Incorporated, who were desirous of constructing a new building and selling the Clairann property. Burns suggested a plan whereby August Kolstad would construct the new building and accept the Clairann building as a part of the cost of constructing the new building. By this method, Whiting Tubular Products, Incorporated, could avoid the payment on "capital gain" on the sale of the Clairann building. For this purpose, Kolstad was the medium by which the Clairann building was sold and the new building erected. In order to carry out this plan, an agreement was entered into on September 27,

1951, whereby Kolstad agreed to construct the new building. The agreement contained the following:

"Both parties agree that this is an agreement of exchange and that the said building when finished and accepted by the party of the first part shall pass to the possession of the said party of the first part under a land contract and when full payment has been made shall be deeded to and become the property of the said party of the first part and that the consideration shall be the deeding and granting by party of the first part of that certain property known as:

"Lots 131 and 132 Keiers Fort Boulevard subdivision of part of P.C. 671, according to the plat thereof as recorded in the office of the register of deeds for Wayne county, in liber 42 of plats, page 92, Wayne county records, and the payment of the sum of $70,000 at the rate of $1,000 per month until said purchase price is fully paid, plus interest at the rate of 6% and with the right to the party of the first part to make larger payments upon said balance at any time."

It also appears that Whiting Tubular Products, Incorporated, did not relinquish its deed of the Clairann building until after plaintiff made an offer to purchase it on September 25, 1951. The offer of purchase contained a provision that Whiting Tubular Products, Incorporated, could remain in the Clairann building for a period of 60 days without payment of rent. This rent-free suggestion was made by Burns.

In *Michael* v. *Kircher,* 335 Mich 566, 570, we had occasion to discuss the apparent authority of an agent to bind the principal. We there said:

"Where a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby. *Richards* v. *Lowrie & Webb Lumber Co.,* 317 Mich 42.   *  *  *

"In 21 RCL, p 856, it is stated:

" 'The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination.'

"In *Faber* v. *Eastman, Dillon & Co.,* 271 Mich 142, the Court said:

" 'It is elementary that persons dealing with an agent may rely on his apparent authority (*Marx* v. *King,* 162 Mich 258), and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence. *Haines* v. *Leonard Warehouses, Inc.,* 199 Mich 580; *Kerns* v. *Lewis,* 249 Mich 27. This question was discussed at length by Mr. Justice McDONALD, speaking for the Court, in *Maryland Casualty Co.* v. *Moon,* 231 Mich 56, and the following from 21 RCL, p 856, was quoted with approval (p 62):

" ' "Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it." ' * * *

" 'The general rule is that the powers of an agent are prima facie coextensive with the business intrusted to his care.' *Grossman* v. *Langer,* 269 Mich 506, 510.

"In an action against a principal by one dealing with an agent, the apparent authority of the latter must be gathered from all the facts and circumstances properly admitted in evidence. *Grinnell* v. *Carbide & Carbon Chemicals Corp.,* 282 Mich 509.

"A principal who has placed his agent in such a situation that a third person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming the agent is authorized to perform a particular act in

behalf of the principal, is estopped to deny agent's authority to perform it. *Grinnell* v. *Carbide & Carbon Chemicals Corp., supra.*

"See, also, *Reichert* v. *State Savings Bank of Royal Oak,* 274 Mich 126, where the Court said:

" 'Agency may be established by an estoppel to deny the existence of such an agency by persons who, through their conduct, have given others reason to believe that such agency exists. *Clark* v. *Dillman,* 108 Mich 625; *Pettinger* v. *Alpena Cedar Co.,* 175 Mich 162; *Plankinton Packing Co.* v. *Berry,* 199 Mich 212; *Quinn* v. *Quinn Manfg. Co.,* 201 Mich 664.' "

In the case at bar, Whiting Tubular Products, Incorporated, accepted the benefit of the apparent agency of Gerald C. Burns. They are now estopped to deny such agency.

It is also urged that Atlantic Die Casting Company was not a purchaser in good faith as it knew, or should have known, that Whiting Tubular Products, Incorporated, planned to retain and transfer its gas space-heating contract with the gas company. This issue presents a question of fact. The trial court, by its decree, determined Atlantic Die Casting Company was a purchaser in good faith. The 2 partners of Atlantic testified that no statements were made to them that gas heat was excluded. There is testimony on the part of John Whiting that he told plaintiff that the heating equipment did not go with the building, and there is the testimony of 2 witnesses that on 1 occasion an oil man accompanied the Atlantic Die Casting Company partners and measured the plant for oil heating. We have often stated that the evidentiary value of the testimony of witnesses is a matter for the trial court to place a value upon. We cannot say that the trial court was in error in making such a finding of fact.

We note that the conveyance whereby plaintiff acquired title to the premises makes no reservation of

the gas-heating fixtures. It is a general rule that whatever is affixed to a building by an owner to facilitate its use and occupation in general becomes a part of the realty. See *Kent Storage Company* v. *Grand Rapids Lumber Company,* 239 Mich 161. In *Nadolski* v. *Peters,* 332 Mich 182, 185, we said:

"It is a fair conclusion from the proofs that the heating system in the building was inadequate to permit proper use of the property for any purpose for which it was suitable. The Modine units were attached to and made a part of the heating system. It was possible to remove them without doing serious damage to the portion of the system remaining, or to the building itself, but one inspecting the property was entitled to assume from the situation actually existing that the furnace, boiler, pipes, radiators, and these Modine units, were all parts of the heating equipment installed and maintained for the purpose of rendering possible the use of the property for any purpose to which it was reasonably adapted."

In the case at bar, the heating equipment was necessary to the purpose to which the realty was adapted and it became a fixture upon its annexation to the property. When plaintiff accepted title to the building, he had every reason to believe that the equipment was a fixture to the building. Moreover, the right to possession of the heating units determined the right to the gas service. The decree holding that Atlantic Die Casting Company is the owner of the gas-heating fixtures and entitled to the right to be furnished gas at its Clairann building is affirmed, with costs.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, and REID, JJ., concurred.

BOYLES, J., did not sit.