CENTRAL WHOLESALE COMPANY *v.* SEFA.

1. Appeal and Error—Questions Reviewable—Absence of Defendants' Appeal in Cross Action.

Questions which might have arisen with reference to defendants' cross action against plaintiff in which they named as a co-defendant the agent of plaintiff who had prepared fictitious invoices from plaintiff wholesaler to defendant retailers are not involved, where no appeal was taken by defendants from a verdict in favor of such codefendant in the cross action, defendants having obtained a verdict in their favor in the cross action against plaintiff-appellant.

2. Principal and Agent—Apparent Authority—Intent.

A principal is liable for the acts of an agent whom the principal, by statements or conduct, places in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position and thereby justifies those dealing with the agent in believing that he is acting within the mandate, thereby creating an apparent authority which replaces that actually conferred, the measure of such apparent authority consisting of those powers which the principal has thus caused or permitted the agent to seem to possess to persons of reasonable prudence, ordinarily familiar with business practices and dealing with the agent and irrespective of the absence of intention to confer such power upon the agent.

3. Same—Apparent Authority—Evidence—Question for Jury.

The apparent authority of an agent to act as the representative

References for Points in Headnotes

[2, 5, 6] 2 Am Jur, Agency § 101.
[2, 6] 2 Am Jur, Agency § 102.
[3, 9] 2 Am Jur, Agency § 454.
[4] 2 Am Jur, Agency § 104.
[7, 8] 2 Am Jur, Agency § 97.
[10] 2 Am Jur, Agency §§ 346–352.
[12] 53 Am Jur, Trial §§ 76, 81.

of his principal is to be gathered from all the facts and circumstances in evidence and ordinarily is a question of fact for the jury's determination.

4. SAME—APPARENT AUTHORITY—ESTOPPEL OF PRINCIPAL.

Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.

5. SAME—LIABILITY OF PRINCIPAL FOR UNAUTHORIZED ACTS OF AGENT.

The responsibility of a principal for the acts of his agent extends to all cases where the agent is acting within the scope of his usual employment or has held out to the public, or to the other party, as having competent authority, although the agent has, in the particluar instance, exceeded or violated his instructions and acted without authority.

6. SAME—APPARENT AUTHORITY.

A principal is liable for the acts of his agent who has acted within his authority as it reasonably appears to a third person, under the circumstances, on the theory that where 1 of 2 innocent persons is to suffer, he ought to suffer who misled the other into the contract.

7. SAME—SCOPE OF BUSINESS.

Persons dealing with an agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business.

8. SAME—PRIMA FACIE POWERS OF AGENT.

Generally, the powers of an agent are prima facie coextensive with the business intrusted to his care.

9. SAME—APPARENT AUTHORITY—EVIDENCE—WHOLESALER'S SALESMAN.

Scope of apparent authority of wholesaler grocer's agent in dealing with defendant retailers was properly submitted to jury in action to recover balance claimed on basis that goods sold were at cost plus 5%, whereas the agent had represented to defendants that they were to make purchases on same basis as a favored customer, cost plus 2-1/2%, where evidence shows the agent was empowered to interview retail grocers for the purpose of selling groceries and produce to them, to quote prices, to deliver statements periodically, to make collections,

to grant allowances for breakage and spoilage, and, with approval of plaintiff, to give special discounts.

10. SAME—APPARENT AUTHORITY—FRAUD.

A principal is not entitled to benefit because of its agent's fraud nor to avoid resulting liability arising from his acting in excess of specific authority granted to him.

11. SAME—RELIANCE ON APPARENT AUTHORITY—EVIDENCE—WHOLESALE GROCERY AGENT.

Defendant retailers' reliance on apparent authority of plaintiff wholesaler's agent *held,* clearly evidenced by fact that they terminated a cost plus 3% arrangement with another wholesaler in order to do business with plaintiff at cost plus 2-1/2%.

12. TRIAL—COMMENTS OF TRIAL COURT—QUESTIONING OF WITNESSES.

Plaintiff-appellant's claim that trial court unduly influenced jury by asking questions of witnesses and making statements in the course of the trial *held,* not well-founded, where record shows that case was a difficult one to present to jury and the judge was prompted by a desire to obviate confusion, if possible, and to insure that the actual issues involved should be clearly and fairly presented.

13. EVIDENCE—PAROL EVIDENCE—WHOLESALE GROCER—INVOICES—CONTRACTS—OPEN CHARGE ACCOUNT.

Parol-evidence rule was not violated in wholesale grocer's action against retailer for balance claimed due on open account by defendants' proof that plaintiff's sales agent had made them the same proposition as another customer because of notation on plaintiff's invoices "terms net cash due and payable the following Monday," since the invoices were not the contract and plaintiff's employee testified that the quoted phrase did not apply to customers having an open charge account.

14. PRINCIPAL AND AGENT—FRAUD—NEGLIGENCE.

Defendant retailers in action against them by plaintiff wholesaler for balance due on asserted contract of cost plus 5% *held,* not guilty of negligence in not sooner discovering the fraudulent procedure of plaintiff's agent in presenting fictitious invoices on forms procured from plaintiff.

Appeal from Genesee; Elliott (Philip), J. Submitted October 8, 1957. (Docket No. 14, Calendar No. 47,054.) Decided December 24, 1957. Rehearing denied March 4, 1958.

Action by Central Wholesale Company, a Michigan corporation, against Floyd Sefa and Nasif Sefa, doing business as Larry Hamady Pure Food Market and Sefa Brothers, for balance on open account for groceries sold and delivered. George Trotter, former agent of plaintiff, added as party to suit on motion of defendants who then filed cross-declaration against him and plaintiff claiming overpayment by reason of fraudulent actions of agent. Verdict and judgment for defendants against corporate plaintiff only. Plaintiff appeals. Affirmed.

*Joseph & Joseph,* for plaintiff.

*White & Newblatt,* for defendants.

CARR, J. Plaintiff brought this action to recover the alleged contract price of groceries and produce sold and delivered by it to defendants, for which payment had not been made. Defendants filed their answer, and, interposing a counterclaim, alleged that under the arrangement actually made by them with plaintiff's agent they had made overpayments that they were entitled to recover. The parties to the cause on appeal have submitted a joint statement of facts covering matters involved in the controversy that are not in dispute.

In June, 1952, and for a number of years prior thereto, Floyd and Nasif Sefa, herein referred to as the defendants, were engaged in operating a retail grocery store at Goodrich, Genesee county. Plaintiff was carrying on a business, during said period, of selling groceries and produce at wholesale, the usual prices charged being cost plus 5%, with certain discounts on produce. In former years defendants had made purchases from plaintiff, but prior to the date mentioned had discontinued doing so. They had, it appears, been buying their groceries

from another wholesaler at a price of "cost plus 3%." Being informed that their brother-in-law, Larry Hamady, who operated a grocery store in the city of Fenton, was purchasing from plaintiff at cost plus 2-1/2%, they desired to make a like favorable arrangement through the salesman, George Trotter, who had been handling the Hamady account. Negotiations resulted in Trotter assuring them that they would be given by plaintiff the right to purchase groceries at cost plus 2-1/2%, with favorable discounts on produce.

Defendants had not previously dealt with Trotter directly, although they had received groceries and produce sold by him to Hamady under the alleged agreement with the latter. In order to facilitate the carrying out of the arrangement made by them with Trotter, they requested plaintiff to include their store in the territory regularly covered by the salesman. Plaintiff's president, Sam Farah, to whom the request was made, at first expressed reluctance to grant it but finally did so. The following excerpt from the joint statement of facts is significant:

"It was desirable for Sefas to purchase on the basis they thought Larry Hamady was purchasing since there was an understanding between the 2 stores that they would advertise together and put out joint handbills. Before Trotter was actually assigned to call upon the Sefas, a meeting was held in the offices of Central Wholesale Company with Sam Farah, Larry Hamady, and Sefa, and it was discussed there that Sefas would have the 'same deal' that Larry Hamady was getting. However, the nature of the 'deal' that Larry Hamady was receiving was not discussed and no money was ever mentioned at this meeting."

Following the arrangement above mentioned, business relations were established between plaintiff and defendants. It is conceded that for some months

Trotter pursued a course of conduct not known to his principal or to defendants. Invoices of groceries and produce ordered and delivered were made out by plaintiff's office employees on the basis of cost plus 5% for groceries and regularly allowed discounts on produce. Trotter called on defendants from time to time, looked over the invoices received by them from plaintiff, and computed discounts thereon which ostensibly resulted in allowing the defendants the benefit of the bargain that they had made with him. Then, for the purpose of insuring that his principal would receive the full amounts indicated by said invoices, Trotter prepared fictitious invoices on blanks that he had presumably obtained from plaintiff's office, listing thereon goods and produce that never had actually been sold and delivered to defendants, and thus making up the amount of the discount that he had pretended to allow to Sefas. It was the claim of the latter on the trial in circuit court that they finally concluded that something was wrong with their business because they were losing money. Apparently they based their retail prices on what they thought they were paying plaintiff, rather than on the amounts that they actually paid, or were charged, pursuant to Trotter's manipulations. They complained to plaintiff, and a resulting investigation revealed the actual situation. Business relations were readjusted accordingly.

The instant case was brought by plaintiffs on the theory that it was entitled to recover for groceries and produce sold and delivered to defendants on the basis of the contract that it claimed existed, namely, cost plus 5% for groceries and the regular prices for produce subject only to discounts allowed to purchasers generally under its method of operation. Obviously, plaintiff's theory of its cause of action ignored the fact that its representative did not make an agreement with defendants for such prices. It

was agreed on the trial that the amount of plaintiff's claim was $3,158. Defendants insisted that plaintiff was bound by the agreement made with them by Trotter, that on the basis of the prices that they had agreed to pay for groceries and produce they had overpaid, or had been overcharged, in the sum of $5,316.51, and that they were entitled to judgment against the plaintiff on their counterclaim for the difference between said amount and the sum of $3,158, as claimed on behalf of plaintiff. Plaintiff's motion for a directed verdict in its favor, made at the conclusion of the proofs introduced by defendants in support of their counterclaim, and renewed at the conclusion of the testimony, was overruled, and the factual issues submitted to the jury. Verdict was returned in favor of defendants for the amount claimed by them. A motion for a new trial was denied, and plaintiff has appealed.

It may be noted that defendants, on leave granted by the circuit court, brought a cross action naming Trotter as defendant, on the theory that he was liable for damages in the event that plaintiff's position was sustained on the trial. However, the jury returned a verdict of no cause for action insofar as Trotter was concerned, and no appeal has been taken from the judgment in his favor. In consequence, questions that might otherwise arise with reference to the counteraction against Trotter are not involved on this appeal.

The principal issue in the case has reference to the apparent authority of Trotter to bind plaintiff by the agreement that he made with defendants. The latter do not claim that testimony was offered on the trial tending to show specific authority granted to the salesman by plaintiff to make such an agreement as was entered into between him and the Sefas. The trial judge recognized the situation in this respect and submitted the question to the jury on the basis

of a claimed holding out by plaintiff as to its agent's authority. The verdict returned was obviously based on acceptance of defendants' claim.

The proofs in the case fairly established that Trotter was empowered to interview retail grocers for the purpose of selling groceries and produce to them, to quote prices, to deliver statements periodically, to make collections, and to grant allowances for breakage and spoilage. The testimony of plaintiff's president on the trial further indicates that, with the approval of plaintiff, special discounts might be given. There is also testimony in the case that Trotter made statements to defendants indicating that Farah knew of the arrangement, and that they relied on such statements. As above noted, it was discussed at the meeting of Farah, Hamady and Sefa, before beginning operations under the arrangement between Trotter and defendants, that the latter would have "the same deal" that Hamady was getting. It does not appear that Farah raised any question as to the nature of the "deal" to which the remarks had reference. It is not disputed that defendants understood that they were to receive special consideration in the arrangements that Trotter might make with them, and the statement in question fairly indicated that such was the situation. It is also significant that prices were not discussed at the meeting.

Defendants' request that they be permitted to deal with Trotter was made in reliance on the promises and assurances of the latter with reference to the contractual arrangement contemplated. The jury obviously found that as a matter of fact, under all the circumstances surrounding the transaction, defendants were justified in assuming that Trotter was empowered to act on behalf of plaintiff in the sale of groceries and produce, including fixing prices and discounts involved therein.

The general rule of law on the issue in question is stated in 2 CJS, Agency, § 96, pp 1210, 1211, as follows:

"Whenever the principal, by statements or conduct, places the agent in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results which replaces that actually conferred as the basis for determining rights and liabilities. The measure of authority consists of those powers which the principal has thus caused or permitted the agent to seem to possess, whether the agent had actual authority being immaterial if his conduct was within the apparent scope of his powers; the question involved is no longer what authority was actually given or was intended by the parties to the agency agreement, but resolves itself instead into the determination of what powers persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe him to have on the basis of the principal's conduct. Absence of intention to confer any power of the character of that exercised cannot be asserted so as to avoid or vitiate the authority, for the agent's authority as to those with whom he deals is what it reasonably appears to be."

In accord with the rule as stated are numerous decisions of this Court, among which are: *R. J. Ederer Co.* v. *Kavanaugh,* 173 Mich 663; *Pettinger* v. *Alpena Cedar Co.,* 175 Mich 162; *Doyle* v. *Widrig,* 207 Mich 411; *Maryland Casualty Co.* v. *Moon,* 231 Mich 56.

In *Michael* v. *Kircher,* 335 Mich 566, 570–572, in discussing the principle of law involved, it was said:

"Whether Sadow had specific actual authority to sell a *new* 1948 Plymouth for the defendants is immaterial, where he had been cloaked by the defend-

ants with apparent authority to sell a 1948
Plymouth. Where a principal cloaks his agent with
apparent authority to do an act not actually author-
ized, the principal is bound thereby. *Richards* v.
*Lowrie & Webb Lumber Co.,* 317 Mich 42. A like
situation as in the instant case was here in *Moss-
man* v. *Millenbach Motor Sales,* 284 Mich 562, where
a salesman for the owner of a used-car lot business
sold a truck, pocketed the proceeds and disappeared.
We affirmed a judgment for the plaintiff on the
ground that the agent had been cloaked with appar-
ent authority. The Court said (pp 566–568):

" 'The main question in the case is whether Smith
was acting as an agent of defendant in the transac-
tion in question.

" 'In 21 RCL, p 856, it is stated:

" ' "The apparent authority of an agent to act as
the representative of his principal is to be gathered
from all the facts and circumstances in evidence, and
ordinarily this is a question of fact for the jury's
determination."

" 'In *Faber* v. *Eastman, Dillon & Co.,* 271 Mich
142, 145, the Court said:

" ' "It is elementary that persons dealing with an
agent may rely on his apparent authority (*Marx* v.
*King,* 162 Mich 258), and that such authority is to
be gathered from all of the facts and circumstances
properly admitted in evidence. *Haines* v. *Leonard
Warehouses, Inc.,* 199 Mich 580; *Kerns* v. *Lewis,* 249
Mich 27. This question was discussed at length by
Mr. Justice McDonald, speaking for the Court, in
*Maryland Casualty Co.* v. *Moon,* 231 Mich 56, and the
following from 21 RCL, p 856, was quoted with ap-
proval (p 62):

" ' " 'Whenever a principal has placed an agent
in such a situation that a person of ordinary pru-
dence, conversant with business usages and the
nature of the particular business, is justified in as-
suming that such agent is authorized to perform in
behalf of the principal the particular act, and such
particular act has been performed, the principal is

estopped from denying the agent's authority to perform it.' " '

" 'In Story on Agency (9th ed), § 443, it is said:

" ' "But the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority. It extends further, and binds the principal in all cases where the agent is acting within the scope of his usual employment, or has held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For, in all such cases, where 1 of 2 innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence."

" 'Persons dealing with an agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business.

" ' "The general rule is that the powers of an agent are prima facie coextensive with the business intrusted to his care." *Grossman* v. *Langer,* 269 Mich 506, 510.

" 'In an action against a principal by one dealing with an agent, the apparent authority of the latter must be gathered from all the facts and circumstances properly admitted in evidence. *Grinnell* v. *Carbide & Carbon Chemicals Corp.,* 282 Mich 509.

" 'A principal who has placed his agent in such a situation that a third person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming the agent is authorized to perform a particular act in behalf of the principal, is estopped to deny agent's authority to perform it. *Grinnell* v. *Carbide & Carbon Chemicals Corp., supra.*' "

See, also, *Atlantic Die Casting Company* v. *Whiting Tubular Products, Inc.,* 337 Mich 414, in which

the *Michael Case* was cited with approval. We think the facts in the case at bar bring the question at issue within the rule recognized in the above decisions. The trial judge was not in error in submitting the matter of Trotter's apparent authority to the jury for determination in the light of the proofs in the case, and such proofs fairly support the verdict rendered.

As before suggested, plaintiff's alleged cause of action was based on the theory of a contract to which defendants had not assented. Defendants were not in any way a party to Trotter's fraudulent acts. Having clothed its agent with apparent authority to make the agreement with Sefas, which brought about the sale of groceries and produce to them, plaintiff is not in position to avoid the resulting liability. It is not entitled to benefit as the result of its agent's fraud and deceit, or to benefit because that agent acted in excess of specific authority granted to him. *Perkins* v. *Boothby,* 71 Me 91. Defendants' reliance on the apparent authority vested by plaintiff in Trotter is clearly evidenced by the fact that they terminated an arrangement under which they were purchasing groceries from another wholesaler at cost plus 3% in order to take advantage of the terms offered by plaintiff's agent.

Other questions raised by plaintiff on the appeal do not require extended consideration. Complaint is made that the trial judge unduly influenced the jury by asking questions of witnesses and making statements in the course of the trial. It is apparent that the case was a difficult one to present to a jury, and we are impressed that the conduct of the judge was prompted by a desire to obviate confusion, if possible, and to insure that the actual issues involved should be clearly and fairly presented. We have examined with care appellant's claims of prejudicial

interference, and conclude that they are not well-founded.

Reliance is also placed on the fact that the invoices sent by plaintiff's employees to defendants contained the notation "Terms net cash due and payable the following Monday." Apparently it is appellant's position that defendants' proofs with reference to the agreement that they made with Trotter, ostensibly acting for plaintiff, violated the parol-evidence rule in that such proofs tended to vary the terms of a written contract. However, the invoices may not be regarded as the contract, and an employee of the plaintiff testified on the trial that the phrase quoted did not apply to customers having open charge accounts. In consequence, it was not applicable to defendants. Neither may it be said that because of the form of the invoices defendants were guilty of negligence in not sooner discovering the fraudulent procedure followed by Trotter.

The judgment is affirmed, with costs to defendants.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Kelly, and Black, JJ., concurred.