## GULF REFINING CO. v. MARK C. WALKER & SON CO. et al.

## CHARLES WEAVER & CO., Inc., v. GULF REFINING CO.

### Nos. 8746, 8747.

Circuit Court of Appeals, Sixth Circuit.

Jan. 8, 1942.

No. 8746:

Edward P. Russell, of Memphis, Tenn. (Canada & Russell, of Memphis, Tenn., on the brief), for appellant Gulf Refining Co.

Wm. M. Hall and Winchester & Bearman, all of Memphis, Tenn. (Wm. G. Hall, and Wm. M. Hall, both of Memphis, Tenn., on the brief), for appellees Mark C. Walker & Son Co. and Hartford Accident & Indemnity Co.

F. H. Gailor, of Memphis, Tenn., for appellee Shelby County.

No. 8747:

Wm. M. Hall, of Memphis, Tenn., for appellant Charles Weaver & Co.

Edward P. Russell, of Memphis, Tenn. (Canada & Russell, of Memphis, Tenn., on the brief), for appellee.

Before SIMONS, ALLEN and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The Gulf Refining Company owns property in Shelby County, Tennessee, on the east bank of the Mississippi River where it maintains a terminal with storage tanks and pipe lines for the receipt of gasoline transported thereto by river barges. The present actions grow out of the alleged negligence of Shelby County, Tennessee, and contractors for the United States Government in the building of levees on appellant's land in Shelby County and in the city of Memphis in pursuance of what is known as the Nonconnah Creek Flood Control Plans under the Federal Flood Control Act, 33 U.S.C.A. § 701c. The principal suit was against the county and the general contractor. It was dismissed as to the county prior to trial and was taken from the jury by a directed verdict for the contractor at the close of the evidence. It is from the order of dismissal and the judgment against it that the Refining Company appeals.

No. 8747 is an appeal from a judgment against the subcontractor, Weaver & Company, in a suit brought originally in the Circuit Court of Shelby County, Tennessee, and removed to the United States District Court, where it was consolidated with the suit against the county and the general contractor. A verdict, based upon negligent performance of the contract, was returned against Weaver in trial to a jury, and the principal ground of Weaver's appeal is alleged error of the court in failing to grant its motion for peremptory instructions based upon lack of substantial evidence of negligence.

8746

The government agreed to make available funds for the construction of the levees here involved, provided Shelby County would provide the easements and rights-of-way for the construction of the project. On February 14, 1939, the county procured from the oil company a right-of-way easement deed across the land of the appellant, which contained the following clauses:

"Provided, however, that proper and adequate provision shall be made for the continued use of the existing pipe lines of party of the first part * * *."

"The County of Shelby, Tennessee, its officers, employees, and agents shall have the right of ingress and egress to, over and across any other adjacent land that may belong to the parties of the first part, or in which they may have any interest, for transporting labor and materials over and across the same in order to construct the levees and/or flood walls and appurtenant structures as contemplated."

"The said vendor for itself, its successors and assigns hereby releases and acquits the County of Shelby, Tennessee, its officers, agents and employees from any and all damages to the hereinbefore described tract of land, by reason of constructing the aforesaid levees and/or flood walls and appurtenant structures, or by the exercising and use of the rights herein and hereby conveyed."

Between the right-of-way thus granted and the Mississippi River was a gully which paralleled the right-of-way some 30 or 40 feet to the west, but not on the land described in the easement deed. The gully was about 25 feet wide and 17 feet deep, and after passing through the land of the appellant, continued south for 100 yards to Nonconnah Creek which empties into the Mississippi River. It was spanned by four gasoline pipe lines through which gasoline was pumped by the appellant from its barges to its storage tanks east of the right-of-way. Sometime after the easement was granted, the United States Engineers in charge of the project decided that it was necessary, in the protection of the levee, that the gully be filled. Negotiations were

undertaken with the Refining Company by the City Engineer of Memphis, acting on behalf of the county, for permission to fill the gully, and resulted in the following communication to him from the superintendent of the Refining Company:

"March 11, 1939.

Mr. W. B. Fowler
City Engineer
Memphis, Tennessee

Dear Sir: Confirming recent conversation in your office, this is to advise that the Gulf Refining Co. grant you permission to fill the ditch at the west end of our property to protect the proposed levee.

Yours very truly,
R. M. Lynch,
Superintendent."

On May 27, 1939, the United States let the levee contract to Walker & Son, and on June 17, Walker sublet to Weaver and Company all of the work to be done on the Refining Company land. Construction was done during the summer, and prior to October 13 the gully was filled and the pipes spanning the ditch covered with earth. In this operation it was necessary for Weaver to use heavy machinery, including tractors and bulldozers. On October 13, 1939, two of the Refining Company barges began pumping gasoline through the pipe lines. The following day it was discovered that a large quantity of gasoline had escaped through breaks in the pipe joints, had flowed to the bottom of the filled gully and was lost in Nonconnah Creek. It is for the value of this gasoline, plus the cost to the Refining Company of repairing the breaks, that the suits were lodged.

■ The first question encountered is the soundness of the court's decision in dismissing the suit against Shelby County. No appeal having been taken from the order of dismissal until after the trial in the consolidated case had been had and the several judgments therein entered, the court, of its own motion, raised the question in respect to the timeliness of the appeal. A supplemental brief now discloses that a motion for new trial was made in time, and a consideration of the authorities persuades us that it tolled the three month period within which, under the Act of February 13, 1925, § 8(c), 28 U.S.C.A. § 230, an appeal may be taken from any final judgment. United States v. Day, 2 Cir., 20 F.2d 733; Aspen Mining & Smelting Co. v. Billings, 150 U.S. 31. 14 S.Ct. 4, 37 L.Ed. 986; Northern Pacific R. Co. v. Holmes, 155 U.S. 137, 15 S.Ct. 28, 39 L.Ed. 99. The appeal was timely.

■ The District Judge dismissed the suit against the county on the ground that it was engaged in the work of a public improvement in pursuance of its governmental functions, and so not liable in tort for negligence of its agents, employees, or an independent contractor, upon the authority of Tennessee cases including McAndrews v. Hamilton County, 105 Tenn. 399, 58 S.W. 483; Wood v. Tipton County, 7 Baxt. 112, 66 Tenn. 112, 32 Am.Rep. 561; Lee v. Davidson County, 158 Tenn. 313, 13 S.W.2d 328; Scott v. Knox County, 166 Tenn. 585, 587, 64 S.W.2d 185; Hale v. Johnson, 140 Tenn. 182, 203 S.W. 949. The appellant presses upon us a contrary view based upon the case of Chandler v. Davidson County, 142 Tenn. 265, 218 S.W. 222. From our consideration of the Tennessee cases we conclude that the District Court correctly applied state law. The Chandler case appears to be out of line with the decisions relied upon, has not since been followed by the Tennessee Supreme Court and, if not impliedly overruled by its decision in Fryar v. Hamilton County, 160 Tenn. 216, 22 S.W.2d 353, has been confined to its peculiar facts, Scott v. Knox County, 166 Tenn. 585, 64 S.W.2d 185.

■ Failing in its effort to hold the county liable in tort, the appellant sought to maintain its action against the county upon the contract by reason of the provision therein that "proper and adequate provision shall be made for the continued use of the existing pipe lines of the party of the first part." It seeks to have us deduce from this clause the intention of the county to hold the appellant harmless from, and to guarantee to indemnify it against any damage which it might sustain in whatever manner such damage might be caused. Such, however, is not, in our view, nor was it in the view of the court below, the clear intendment of the provision. It goes no farther, in obligating the county, than to covenant that the flood control operations were not such as to require the displacement of the pipe lines or to interfere with their operations through any planned or affirmative acts of the county or the contractors. To read into it, a general guaranty against damage would be in conflict not only with the general tenor of the agreement and with the specific release and

acquittance of the county therein contained, but would raise a serious question as to the authority of the county to undertake such obligation. While it is urged that the license to go upon the lands of the Refining Company for the purpose of filling the gully is a grant, separate and distinct from the easement, and so but a mere personal license to Shelby County and unassignable, the argument is not persuasive. The two grants must be construed in pari materia. The license is supplemental to the easement. The Refining Company understood that the filling of the gully was for the protection of the levee and that this operation was incidental to and part of the general purpose for which the easement was granted.

■■ The remaining grievance of the appellant is based upon the direction of a verdict for Walker. This defendant was the general contractor, and Weaver its subcontractor. There is no showing, upon the record, that there was negligence on the part of Walker in the selection of Weaver. In this situation it may not be held liable for Weaver's negligence unless the thing contracted to be done is necessarily a public nuisance, or the injury is a direct result of the act or thing which the independent contractor was required to do. The applicable law was given careful consideration by this court in Salliotte v. King Bridge Co., 6 Cir., 122 F. 378, 380, 65 L.R. A. 620, in an opinion by Judge, afterwards Mr. Justice Lurton, upon consideration of many cases, including Powell v. Virginia Construction Co. 88 Tenn. 692, 697, 13 S. W. 691, 17 Am.St.Rep. 925. To combat this view and to distinguish the present controversy from the Salliotte case, the appellant urges that the license authorized neither Walker nor its subcontractor to go upon its land, and that when they did, they were trespassers and responsible for any damage done thereon. But, as we have already indicated, the license was not merely personal to Shelby County, but was incidental and appurtenant to an easement which contemplated an operation necessitating access not only to the land granted, but to any other adjacent land that might belong to the Refining Company or in which they might have interest. The suit was rightly dismissed as to Walker.

8747

The appeal of Weaver, the subcontractor, from the judgment against it, necessitates detailed description of the pipe lines, their supporting structure and the practice followed in filling the gully. At the point where the pipe lines crossed it, the gully was from 25 to 27 feet wide. There, three reinforced concrete beams, 11″ x 18″ in size and about 50 feet long, crossed the ditch with their ends extended on and into the bank on either side. Between the center and southernmost longitudinal beam was a cross-beam without any supporting pier beneath it. The four pipe lines crossed the ditch between the center and southernmost longitudinal beam and rested upon the cross-beam, the longitudinal beams being spaced approximately 5 feet from one another. On the northerly longitudinal beam and the center beam rested a wooden bridge for cars and light trucks. These two beams were not otherwise connected. Each of the four pipe lines had a cast iron flange joint somewhere between the transverse beam and the west bank of the ditch. The joints consisted of a flange screwed to the end of each pipe section, bolted together, so that the joints might be easily disconnected for removal of the pipes.

The practice followed by Weaver in filling the gully was to bring the dirt to the edge of the ditch and then to shove it in with a bulldozer which was also used to spread and level the dirt when it had reached a point where scrapers could go into the ditch. The scrapers were drawn by caterpillar tractors, and the bulldozer is itself a caterpillar tractor with a blade projecting from 4 to 6 feet in front. Weaver's superintendent and its bulldozer operator were cautioned not to strike or get on the pipe lines, and at all times during the operation, the work was under the supervision of a government inspector. The undisputed evidence is that when the fill approached the pipe lines the bulldozer pushed the earth beneath them; that the wooden bridge resting upon the north and center longitudinal beams was taken up, and that when the fill reached a certain height the dirt, when pushed into the opening beneath the beams, rolled into it until it became filled and the pipes covered; that the weight of the bulldozer did not come on to the pipe lines; that no machinery touched the pipes; that the closest the blade ever came to the northernmost pipe line was a foot and a half, and that when the pipes were being covered, the bulldozer blade was being held a foot and a half or two feet above them. The earth

used for the fill was heavy gumbo, estimated to weigh from 2500 to 2800 pounds per cubic yard, depending on moisture content and degree of compaction.

The theory of the Refining Company was that the bulldozers and the scrapers were so negligently operated that they either struck or were driven over the pipe lines or the supporting concrete beams, so as to cause them to sag or break, resulting in the opening of the flange joint and the loss of the oil. There is no direct proof of it and the plaintiff relies upon inferences to be drawn from attendant circumstances.

■ There is no substantial controversy with respect to the legal principles applicable to the issue presented. The appellee concedes that a contractor or subcontractor doing work for the government in accordance with its requirements is not liable to a third person for its incidental effect upon his property, and that there is no presumption of negligence. Salliotte v. King Bridge Co., supra; Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; Chattanooga & T. R. Power Co. v. Lawson, 139 Tenn. 354, 373–376, 201 S. W. 165. It urges, however, that immunity does not extend to liability for damage which results from the contractor's negligence, Converse v. Portsmouth Cotton Oil Refining Corp., 4 Cir., 281 F. 981, and this the appellant does not dispute. The issue therefore resolves itself upon the principal question in the case—the denial of Weaver's motion for a directed verdict—to whether there was substantial proof of the defendant's negligence.

The plaintiff's superintendent testified that the covering of the pipe lines started in the evening around dusk; that he left at that time, with a government inspector remaining on the job; that when he returned the following morning the pipes had been covered to a depth of two or three feet; that there were no tracks or marks or any evidence of any nature that the machine had been on top of the fill covering the pipes; that there was no sign of any sinking in the fill, and that while he saw tractor tracks, they were some 10 or 12 feet south of the pipe lines. The plaintiff relied mainly on three bits of evidence. The operator of one of the bulldozers admitted that he drove his heavy machine upon the north beam in crossing the ditch. Since he did so, the appellee argues that "it is not difficult to *imagine* and *assume* that he drove the machine against and upon

the other beams and pipe lines. Whether he did or not, the tremendous weight of the machine upon the north beam, and so near the other beams and pipe lines, could not fail to do great damage." It is to be remembered that the north beam was in no way connected with the center or southernmost longitudinal beams upon which the pipe lines rested after the wooden bridge had been taken up, and that it, itself, had been a support for truck traffic, though of vehicles lighter than the tractor. Imagining or assuming that the weight of the machine upon the north beam injured the pipe lines, is clearly a non sequitur and does not rise to the dignity of inference.

Another item relied upon by the plaintiff is an inference sought to be drawn from the testimony of an expert upon a question relating to a hypothetical practice, and his response that it would be a careful though more expensive way to do it This in no respect challenges the method adopted by the contractor which the record shows conformed to customary and approved practice.

The final item of evidence relied upon to support the submission of a fact issue to the jury is the statement of Captain Meyer of the United States Engineer Corps in charge of the project, that in his opinion, weight of the dirt superimposed upon the pipe would not cause damage, assuming the pipe and beams to be in sound condition, and assuming the absence of unknown external conditions. However, Captain Meyer conceded that he had not examined the pipes and beams; and on cross-examination that he had no knowledge of their dimensions, span, type of internal reinforcement, the external concrete, or other details entering into the problem; that he would not venture any judgment as an engineer as to the substantialness of the structure and pipe joints, without getting down into the ditch and examining them and getting a knowledge of all attendant circumstances and conditions; that he was not a pipe line expert, and that he would not venture an opinion as such. These concessions completely destroy Captain Meyer's opinion evidence as tending to support an inference that some act or condition other than the weight of the dirt caused the break in the pipe joints.

■ In this state of the record we think the controversy calls for the application of the principle frequently applied by this and other courts, namely: that to

submit to a jury a choice of probabilities is but to permit them to conjecture or guess, and where the evidence presents no more than such choice, it is not substantial. Davlin v. Henry Ford & Son, 6 Cir., 20 F.2d 317; Louisville, etc., R. Co. v. Bell, 6 Cir., 206 F. 395; Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795; O'Mara v. Pennsylvania R. Co., 6 Cir., 95 F.2d 762. As we have already pointed out, there is no controversy with respect to the nonliability of a government contractor for incidental or consequential damage when he does work for the government in accordance with its requirements. Having two permissible inferences in the present case. if we concede that the plaintiff's inference is a permissible one, the first leading to a conclusion that the contractor was negligent and the other, equally tenable, leading to a conclusion that the weight of the earth, which was necessarily incident to the operation, caused the damage, then the plaintiff, having the burden of proof, fails to establish its premise of negligence. Our final conclusion therefore must be that the court erred in failing to direct a verdict for the defendant. There was no substantial evidence of negligence, and it becomes unnecessary to consider other questions in the case.

The judgment in 8746 is affirmed. That in 8747 is reversed.