## FRANKLIN et al. v. SKELLY OIL CO.

### No. 2827.

Circuit Court of Appeals, Tenth Circuit.

March 10, 1944.

F. A. Rittenhouse, of Oklahoma City, Okl. (John F. Webster, Walter D. Hanson, and Olive R. Rittenhouse, all of Oklahoma City, Okl., on the brief), for appellant.

James W. Cosgrove and Alvin F. Molony, both of Tulsa, Okl. (W. P. Z. German, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On December 20, 1941, an explosion occurred in the home of appellant Quay Franklin, resulting in the complete destruction of the residence and its contents. The insurance companies, appearing as appellants herein, settled the liability for the loss under their respective policies and became subrogated to the extent thereof. Whereupon, Franklin and his wife, individually, and the insurance companies, as subrogees, instituted this action against the appellee, Skelly Oil Company, to recover the value of the residence and its contents, on the grounds that Skelly negligently installed a butane gas system in the residence, causing the explosion and fire. At the conclusion of all the evidence, the trial court sustained a motion to dismiss because of its insufficiency, and from the judgment dismissing the cause, appellants have appealed, contending that the submitted evidence presented a jury question.

According to the allegations of the petition, on May 13, 1941, Skelly Oil Company entered into a contract with one Mitchell, the former owner of the house, by the terms of which Skelly undertook to install a complete butane gas system for the residence, and in so doing connected the butane gas with the pipes and connections which had been previously installed as a natural gas system for domestic purposes. It was alleged that the pipes and connections adaptable for a natural gas system were wholly unsuited and unsafe for the transmission and distribution of liquefied or butane gas as Skelly well knew, and as a result the butane gas leaked through the connections causing the explosion and fire.

Skelly admitted the installation of the butane system, but denied that the pipes and connections already installed in the residence were unsuited or unsafe for the transmission of butane or liquefied gas.

The case was presented by the appellants on the specific theory that the fittings and connections on the pipes, previously used for natural gas purposes, were sealed or cemented by a material or compound of white lead and oil, containing an organic oil base, which when subjected to a liquefied gas would dissolve, leaving the white lead substance porous and thereby permitting the gas to escape through any openings in the threaded pipe.

On this point appellants' witness Porter testified that he examined the premises for the purpose of bidding on the installation of a liquefied gas system in competition with Skelly. He observed the pipes in the basement of the residence, "chipped" a white substance from a joint of pipe, and from a casual examination determined it to be a compound of white lead and oil—that white lead and oil is soluble when subjected to liquefied gas, hence he concluded that the pipes and fittings, originally installed for a natural gas system, were unsuited and unsafe for a liquefied or butane system. He did not make a chemical or scientific analysis of the substance "chipped" from the joints of pipe, and his conclusion that white lead and oil, containing an organic oil base, was used in the fittings in question is based solely upon his observation of the small particle of material "chipped" from one of the joints.

Appellants' witness DeBarr, testifying as a chemist, stated in substance that any lead compound with an organic or vegetable oil base would dissolve in the presence of a liquefied gas, leaving the lead aggregate in a powdery form, thereby permitting the gas to flow through a space which had been sealed or cemented by the compound. And he testified that in his opinion pipes and fittings sealed or cemented with a compound of white lead and oil, containing an organic or vegetable oil base, were unfit for the transmission of butane gas, but DeBarr did not examine the fittings or the compound used in the residence in question—his testimony was purely hypothetical.

The probative force of this testimony as evidence of negligence, when taken at its full value, is exceedingly doubtful, however we need not now consider its prima facia sufficiency. Appellants' witness Heath testified that in September, before the explosion in December, 1941, he sold the Franklins an automatic hot water heater which was installed in the residence for the consumption of butane gas. The heater was actually installed by a Mr. Rhine, who testified that the installation of this particular appliance required at least six different pipe fittings and connections; that in making these connections he used a compound of white lead and raw linseed oil, which according to appellants' chemist is an organic oil and subject to dissolution in the presence of liquefied gas. Other appliances such as stoves and a floor furnace were installed subsequent to the installation of the butane system, but in each instance there was testimony to the effect that a compound especially adaptable for the transmission of butane gas was used on the connections.

Having undertaken to install a butane system for the owner of the residence, it became Skelly's legal duty to install the system in a manner adapted to the purpose for which it was intended to be used. In that respect it was held to a standard of care commensurate to the particular hazard involved, but the mere fact that an explosion occurred in the Franklin residence on December 20, 1941, creates no presumption that the explosion was caused by the negligence of Skelly. It is of course incumbent upon the appellants to prove not only that Skelly was negligent in the installation of the butane system, but that such negligence was the proximate cause of the damage which they seek to recover.

There is no direct testimony in this record to the effect that the explosion and fire was caused from a gas leak in the house. Neither is there any testimony tending to show from what particular joint or connection the gas escaped to cause the explosion and fire, if such was the cause, and unless the allegations of the petition and the theory of the appellants are supported by competent evidence, and the reasonable inferences to be drawn therefrom, there is no issue to submit to the jury, and it becomes the duty of the court to decide the cause as a question of law. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Alexander v. Standard Accident Ins. Co., 10 Cir., 122 F.2d 995; Brown v. Capital Transit Co., 75 U.S.App.D.C. 337, 127 F.2d 329. The verdict of a jury must be based upon something more than mere speculation and conjecture. It is not sufficient to show a set of circumstances bringing the

theory of appellants within the realm of possibilities, nor can the theory itself furnish the deficiency; the evidence must bring the theory to the level and dignity of a probable cause. Gunning v. Cooley, supra; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Lowden v. Friddle, 189 Okl. 415, 117 P.2d 533.

■■ Conceding therefore, without deciding, that the connections on the pipes previously used for the natural gas system were sealed or cemented by a substance or compound containing a soluble base unsuited and unsafe for butane gas, yet it remains to be determined whether the explosion was caused by a leak from one of the connections for which Skelly is responsible or whether the explosion was caused from a leak in a connection of the pipe made by Rhine, which was admittedly sealed or cemented by a compound or substance containing a soluble base. In this posture the evidence at most generates two separate and independent probable causes, either of which may have been the efficient cause, and there is no evidence tending to show which of the two probably caused the explosion. The mere choice of probabilities does not constitute evidence, but creates only conjecture and surmise on which a verdict of a jury cannot stand. Pennsylvania R. Co. v. Chamberlain, supra; Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795; Alexander v. Standard Accident Ins. Co., supra; Gulf Refining Co. v. Mark C. Walker & Son Co., 6 Cir., 124 F.2d 420; Troutman v. Mutual Life Ins. Co., 6 Cir., 125 F.2d 769, 773.

■ Appellant further contends, however, that the trial court excluded certain documentary evidence, which if admitted would have been sufficient to carry the case to the jury. One of the documents offered and excluded was in the form of a notice or circular letter upon a letterhead of the Oklahoma State Corporation Commission addressed "To All Licensed Installers of Liquefied Petroleum Gas Systems In The State Of Oklahoma", prepared under the direction of the Corporation Commission and signed by E. D. Graham, as Liquefied Petroleum Administrator. The letter or notice related to the installation of appliances for the consumption of butane or liquefied gas, and cautioned against the use of appliances which did not meet prescribed specifications. It further stated "that on and after October 15, 1940, no appliances may be converted from natural gas to liquefied gas". The document was offered in evidence as a supplement to, or an interpretation of, Section B 2 (c) of the Oklahoma Liquefied Gas Administrator's rules and regulations, which provided that marketers and users of liquefied gases should exercise every precaution to assure that only those gases for which a system was designed, examined and listed would be used. This regulation was promulgated and adopted in pursuance of Chapter 20, Article 9, Session Laws of 1939, p. 56, which authorizes the Corporation Commission, after an investigation and hearing, to promulgate regulations relating to the storage, distribution and use of liquefied gas, and requires that such regulations be filed with the Secretary of State. The document in question was never filed with the Secretary of State, and consequently cannot be considered a part of the rules and regulations, unless promulgated and adopted in accordance with the authorizing statute. It is plain therefore that this document does not arise to the effect and dignity of a rule and regulation of the Corporation Commission, and is not entitled to be admitted in evidence as such.

■ Whether the document is admissible in evidence as a written statement by a public official in the performance of a governmental function (See rule 515, Amer.Law Institute, Model Rule of Evidence) we need not decide, since we are convinced that the proffered instrument is incompetent and irrelevant to prove or disapprove any issue in the case, albeit otherwise admissible in evidence. The instrument related to the installation and use of liquefied gas containers and appliances. It did not relate in any way or purport to prescribe the manner, method or means for the installation of the pipes or fittings to be used in the transmission and distribution of the butane gas. Skelly is not charged with negligent installation of any butane gas containers or appliances, and the court did not err in excluding it as evidence of negligence.

Complaint is also made of the refusal of the court to admit a report in the form of a letter addressed to the State Fire Marshal, and signed by one Archer, Liquefied Petroleum Gas Inspector. This letter, dated December 28, 1941, gave an account of the fire and stated that in the opinion of the writer it was caused from the installation of a butane system by connecting the bu--

tane gas with pipes in the residence, which had been originally used for the purpose of burning natural gas. He stated that natural gas piping was not proper for the use of liquefied petroleum gas, because of the use of joint and thread compounds having a lead base which is soluble to liquefied gas, and that over a period of time the gas would eat out the compound and cause leaks. This written statement was excluded from the evidence on the grounds that it was not a public document and that it constituted purely an opinion of the Inspector. Under the law of Oklahoma (Sec. 3735, O.S.1931, 74 O.S.A. 314) the State Fire Marshal and other named officers are required to investigate every fire, and the officer making the investigation is required to file a written report with the Fire Marshal relating to the cause and origin of the fire, and the Marshal is required to keep a record of the same in his office, which shall be open to public inspection.

This written statement was taken from the files of the Fire Marshal's office and was in the nature of a report by a public officer acting in pursuance of his statutory duty, and it is ordinarily admissible under the exception to the hearsay rule, as primary evidence of the fact it purports to convey. Rule 515-16 American Law Institute, Model Code of Evidence; Wigmore on Evidence, 3d Ed., 1630-33. This universally recognized exception to the hearsay rule is based on the reliability, trustworthiness and authenticity which usually attends a public record or report made and kept in the performance of an official function in behalf of the public interest. Village of Evanston v. Gunn, 99 U.S. 660, 25 L.Ed. 306; Chesapeake & Delaware Canal Co. v. United States, 3 Cir., 240 F. 903, affirmed 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889; Arnold v. Board of Com'rs, 124 Okl. 42, 254 P. 31. The exception has been extended to include reports, findings and conclusions of public officials concerning causes and effects when made in pursuance of authority to conduct inquisitions and hearings in the public interest. Rule 516 Amer. Law Institute, Model Code of Evidence; Wigmore on Evidence, 3d Ed., 1638; Commonwealth v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281, Annotation 289; Branford Trust Co. v. Prudential Ins. Co., 102 Conn. 481, 129 A. 379, 42 A.L.R. 1450; Pacific Live Stock Co. v. Lewis et al., Oregon Water Board, 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084. It has been considered a justifiable abridgement of the privilege of cross-examination on the grounds that the inquisition or inquiry was in the nature of a judicial proceeding wherein the right of cross-examination was amply safeguarded and protected. Pacific Live Stock Co. v. Lewis et al., Oregon Water Board, supra. See Wigmore on Evidence, 3d Ed., 1370-76. But, expressions of opinion and conclusions on causes and effects based upon factual findings are not always admissible as public records, especially when it is shown either that the conclusion or opinion which the statement purports to convey would not be admissible in evidence if tendered by the direct testimony of the maker, or if the denial of the right of cross-examination would result in the perversion of the rule of trustworthiness and reliability. See Kansas City Life Ins. Co. v. Meador, 186 Okl. 397, 98 P.2d 20. The search is for truth and the trial court is the first and best judge of whether tendered evidence meets that standard of trustworthiness and reliability which will entitle it to stand as evidence of an issuable fact, absent the test of cross-examination.

Here the written statement of the inspector was offered for the purpose of proving the primary issue of negligence in a private lawsuit, and upon its face it stated the bare opinion of the officer who made it. By its peculiar character and the circumstances under which it was offered, the trial court was justified in the exercise of his discretion not to admit it ex parte. The statement is not inadmissible because of its lack of authenticity or because it is not a public document subject to public inspection, but because the matter and things contained therein express merely the opinion of one whose official office and duty does not rise to the dignity of an adjudicator of causes and effects.

Finally, the appellants complain of the refusal of the trial court to admit certain other rules and regulations of the Liquefied Petroleum Administrator of the State. These rules were promulgated and adopted under Chapter 8 of the Laws of 1941, p. 218, 52 O.S.1941, § 423 et seq., effective August 21, 1941, after Skelly installed the butane system in May, 1941. Obviously, the rules and regulations were not in force at the time of the installation and were not admissible as evidence on the issue of negligence.

The judgment is affirmed.

PHILLIPS, Circuit Judge (concurring).

Judge Murrah's opinion has my full concurrence, but it is my view that the judgment below should be affirmed for an additional reason. Appellants' witnesses testified that if the joints in pipes of the original system installed in the Franklin home for natural gas were sealed with a compound of white lead and an organic oil, the butane would dissolve the organic oil and cause the joints to leak. Appellants' expert witness DeBarr testified that butane would not dissolve a mineral oil in a joint sealing compound, and testified to a satisfactory personal experience with gas joints sealed with a compound containing mineral oil. There was no evidence to the contrary. Appellants' witness Porter testified that he chipped off a small particle of the joint sealing compound on the outside of a joint and expressed the opinion that the compound consisted of white lead and oil. Of course, the oil in the compound which he removed from the outside of the joint would have long since disappeared. Moreover, he did not testify as to the character of the oil in the compound. For anything that appears in the evidence, it may as well have been a nonsoluble mineral oil as a soluble organic oil. Hence, the evidence wholly failed to establish negligence on the part of Skelly Oil Company.