William M. HANLEY and Lilly V. Hanley, Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE COMPANY, a New York corporation, Defendant.

Civ. A. No. 2645.

United States District Court
W. D. Michigan, S. D.

April 29, 1959.

641

John T. Ryan, St. Joseph, Mich.,
Warner, Norcross & Judd, Grand Rapids,
Mich., for plaintiffs.

J. T. Hammond, Benton Harbor, Mich.,
Samuel Levin, Chicago, Ill., for defendant.

KENT, District Judge.

This matter is before the Court on the motion of the defendant for a judgment notwithstanding the verdict and in the alternative for a new trial. After jury trial a verdict was returned and entered in favor of the plaintiff in the amount of $25,589.70. During the course of the trial the defendant made appropriate motions for a directed verdict at the close of the plaintiffs' proofs and at the close of all proofs. The motions were denied in accordance with the provisions of Rule 50, Federal Rules of Civil Procedure, 28 U.S.C.A., which provides as follows:

"(a) A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor.

"(b) Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion

for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

Briefly the facts are as follows: Plaintiffs were the owners of a home located on the shores of Lake Michigan near St. Joseph, Michigan. Plaintiffs had been insured under an "all risk" policy obtained by them in another company through the agent (William Allen) who was also the agent for the defendant company. The other company cancelled its policy and Mr. Allen obtained a policy of insurance for the plaintiffs in the defendant company which carried an "all physical loss" endorsement. On the evening of October 16, 1954, or the morning of October 17, 1954, a substantial portion of the bluff behind the plaintiffs' house fell into Lake Michigan. Plaintiffs claim, and offer proof to establish, that as a result of the loss of the supporting bluff the home was substantially damaged so that it could not be lived in and in order to mitigate the damages as required by the policy of insurance the plaintiffs moved the home to another location away from the lake. They now sue for the loss sustained, claiming as damages the cost of moving the house and placing it in the condition in which it was prior to the fall of earth on October 16 or 17, 1954.

During the course of the pre-trial conference, held in this case, prior to trial, certain agreements were reached which were noted by the Court in the pre-trial memorandum, including the following:

"Defendant admits that *if* damage sustained as a result of such slides

were covered, and *if* the policy in question was issued when the company had full knowledge of the facts, and *if* there was actual physical damage to the premises as a result of the slide in question, then and in that event the reasonable cost of moving the structure to another location to mitigate damages would be covered by the policy in question. Defendant does not under any circumstances admit that all of the loss claimed was covered."

It was the plaintiffs' theory and claim, and evidence was offered to establish, that the fall of the bluff was a "landslide" within the meaning of the policy in question. It is plaintiffs' theory and claim, and they offered evidence to establish, that there had been an unusually heavy rainfall for a period of time prior to the incident described which weakened the bank or bluff causing it to slide.

It was the defendant's theory and claim that the loss was in fact a result of erosion caused by high water on Lake Michigan, a risk which was specifically excluded by the policy in question. The defense offered evidence in support of its theory and the issue was submitted to the jury.

Several grounds for directed verdict and for judgment notwithstanding the verdict are alleged. They may be grouped as follows:

(1) that plaintiffs failed to prove that the alleged damage, if any, to plaintiffs' dwelling, or the resulting damage claimed, was directly and proximately caused by a peril insured against under the policy of insurance issued by the defendant company;

(2) that the evidence disclosed that the plaintiffs had committed fraud and false swearing within the meaning of the policy of insurance sued upon, thereby rendering said policy void as a matter of law;

(3) that the evidence disclosed a concealment of conditions known to the plaintiffs at the time they procured the policy which materially affected the risk."

■■ As stated by the United States Supreme Court in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, at page 253, 61 S.Ct. 189, at page 195, 85 L.Ed. 147:

"If alternative prayers or motions are presented, as here, we hold that the trial judge should rule on the motion for judgment. Whatever his ruling thereon he should also rule on a motion for a new trial, indicating the grounds of his decision. * * *"

It is clear, as stated in Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers, 6 Cir., 193 F.2d 209, at page 213:

"* * * upon a motion of a defendant for a directed verdict the trial judge should overrule the motion unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for him. * * *."

and further in Brunswick-Balke-Collender Co. v. Foster Boat Co., 6 Cir., 141 F.2d 882, at page 884, the Court of Appeals for this Circuit held in an appeal from this Court:

"Upon the question whether Brunswick first breached its contract being raised by a motion for directed verdict and a motion for judgment notwithstanding the verdict, the evidence must be considered in the light most favorable to the plaintiff, and all conflicts resolved in its favor. Michigan Law is, in this respect, consonant with general law. Thurkow v. City of Detroit, Michigan, 292 Mich. 617, 291 N.W. 29, * * *."

Thus, the basic questions before the Court in connection with the defendant's motion for judgment notwithstanding the verdict are:

(1) whether the evidence produced upon the trial of the cause, viewed in

the light most favorable to the plaintiffs, together with all reasonable inferences to be drawn therefrom were sufficient to support a verdict for the plaintiffs, and

(2) whether the evidence on behalf of the defendant in regard to the charge of false swearing and concealment of material facts was such as to require a verdict for the defendant.

As to the first issue relating to the evidence and the proof of the cause of the loss, we must necessarily recognize the decision of the Circuit Court of Appeals for this Circuit in Fireman's Fund Ins. Co. of San Francisco v. Hanley, 6 Cir., 1958, 252 F.2d 780. That case involved the son of the plaintiffs in the instant case, involved the same alleged landslide, and claimed damage to the home of the son of the plaintiffs who resided immediately next door to these plaintiffs.

The Court of Appeals held at page 784:

"This case presented evidence from which the jury presumably found that the erosion and action of high water, surface water and waves were not predominate and efficient causes of the landslide, These factors did not, like the factors in the Boon case, operate on plaintiffs' property at any time during or near the time of the loss. The toe of the bluff had been for some time protected by the structures in the lake and by a gradually built sand beach of 30 to 35 feet.

"Experts for both parties testified that the landslide directly caused the injury and substantial evidence was given to the effect that the sustained rainfall directly caused the landslide. The latter conclusion was supported by the fact that part of the bluff which fell off in the first landslide, October 13, 1954, roughly corresponded to a layer of the clay situated above the stratum of sand-clay which had emitted ground water over a period of years. The weight of the water percolating in the soil, which was largely clay, estimated by one expert as being about 113 tons of water on an acre of ground, produced by one inch of rainfall, may have caused great sections of clay to slough off and fall down the bluff. These chunks pushed the bulldozer some 75 feet into the lake. Defendant's expert testified that stratified beds of sand or gravel overlying clay constitute a condition favorable to seepage and sliding. He said that underground water softens clay and at the same time increases the weight of the material affected.

"Defendant's counsel conceded at the close of the charge that there are two lines of decision governing situations of this kind and that the court followed one of these established lines. The charge of the court quoted above upon these features of the case follows Pearl Assurance Company, Ltd., v. Stacey Brothers Gas Const. Co., 6 Cir., 114 F.2d 702. This case holds that where a policy expressly insures against direct loss and damage by one element but excludes loss or damage cause by another element, the coverage extends to the loss even though the excluded element is a contributory cause. To the same effect is Jordan v. Iowa Mutual Tornado Insurance Co. of Des Moines, 151 Iowa 73, 130 N.W. 177. Cases cited by defendant follow: Chute v. North River Insurance Co., 172 Minn. 13, 214 N.W. 473, 55 A.L.R. 938; Russell v. German Fire Insurance Co., 100 Minn. 528, 111 N.W. 400, 10 L.R.A.,N.S., 326; Newark Trust Co. v. Agricultural Insurance Co., 3 Cir., 237 F. 788; National Fire Insurance Co. v. Crutchfield, 160 Ky. 802, 170 S.W. 187, L.R.A.1915B, 1094."

This Court is satisfied that the reasoning of that decision is applicable to the instant case, that the evidence was substantially similar, that the jury was justified in this case in reaching the conclusion that there was a landslide.

This defendant, as did the defendant in the Fireman's Fund case, claims that if the loss was not caused by erosion, waves or high water, that it was, however, caused by surface water. The Court of Appeals in the Fireman's Fund case succinctly disposed of that claim as follows, 252 F.2d at page 784:

"As to surface water, this contention may be readily disposed of. While the prolonged rain temporarily produced surface water, there is no testimony that the surface water caused any damage. Part of the water percolated into the bluff and part of it simply was not retained on the property but ran off as plaintiffs' land sloped from the lakeside to the highway. As held by the Michigan Supreme Court, Fenmode, Inc. v. Aetna Casualty & Surety Company, 303 Mich. 188, 6 N.W.2d 479, surface waters are lost by percolation, evaporation, or by reaching some definite water course. One expert testified that, when water has gone into the ground one inch, geologically it is considered ground water. The proved emission of ground water from the stratum of sand on the face of the bluff after the prolonged rain indicates that to a large degree the heavy rain was converted into ground water."

Defendant further alleges that false swearing by the plaintiff, William Hanley, was so overwhelmingly established that a directed verdict should have been granted in favor of the defendant.

Defendant's policy provided in part:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the assured therein or in case of any fraud or false swearing by the insured relating thereto."

The principal items of false swearing alleged by the defendant relate to a certain tree which plaintiff claimed went down the bluff with the fall in question; certain activities of the plaintiff, having to do with attempts to obtain relief from the damage on the lake shore and certain allegations relative to the amount of loss sustained. The plaintiff frankly admitted on the trial that he was mistaken as to when the tree went over the bluff. We do not consider that the answers relative to the activities of the plaintiff in connection with attempts to secure relief from the water damage on Lake Michigan were material to the risk or material to the payment of this loss for reasons which will hereinafter appear, and we are not satisfied that the allegations of value or cost of repair were made for the purpose of defrauding this defendant. In truth and in fact as to certain of the items there was some doubt in the mind of the plaintiffs' counsel as to whether they were proper items of damage, and there were other items which ultimately cost less than had been estimated by the plaintiff.

The Court of Appeals for this Circuit in Cooper v. Firemen's Ins. Co. of Newark, N. J., 6 Cir., 1945, 148 F.2d 337, 338, held:

"It is the law of Michigan that in order to void a policy for fraud or false swearing the false swearing must have been done with an actual intent to defraud the insurer. Bernadich v. Bernadich, 287 Mich. 137, 144, 283 N.W. 5; Alma State Savings Bank v. Springfield Fire & Marine Ins. Co., 268 Mich. 631, 634, 256 N.W. 573; Perkins v. Century Ins. Co., 303 Mich. 679, 7 N.W.2d 106.

"Indeed, so much the appellee concedes. It is also the law of Michi-

gan that where misrepresentations or false statements are claimed to void an insurance policy, intent to defraud is a question of fact for the jury. Bernadich v. Bernadich, supra.

"Even were we to concede that a reasonable inference might have been drawn from the facts that the excessive valuation was made with an intention to deceive the appellee, it does not necessarily follow that it precluded all other reasonable inferences. The appellant's counsel gave reasonable explanation for the figures used. The intention to deceive was denied both by him and the appellant. The insurance company adjuster was acquainted with all of the circumstances of the case at the time the proofs of loss were prepared. It was equally within the competence of the jury to find that the misrepresentation was made as the result of an honest mistake as to the technical meaning of 'sound value,' and in any event without an intention to deceive and defraud the appellee. The motion for directed verdict should have been denied and the case submitted."

■ This Court is satisfied, as to the issue of fraud and false swearing, that the issue was properly submitted to the jury upon clear instructions, that it was a jury question, that the jury properly resolved the issue against the defendant. Numerous authorities are cited on behalf of the defendant but a close examination thereof reveals that those which are of sufficiently recent date to be controlling relate to health and accident and life insurance policies where there was a deliberate and intentional concealment or false statement relative to the health of the insured, a matter which could not be determined at the time that the policy was issued. The Court is therefore satisfied that the case was properly submitted to the jury, that there was no error on the part of the Court in refusing

to grant the motion for direced verdict, and that the verdict should be permitted to stand.

Defendant has also asked in the alternative for a new trial alleging 27 different grounds in support of the motion. Rule 59(a) of the Federal Rules of Civil Procedure covers the basis on which a new trial can or should be granted, as follows:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

For purposes of clarity and brevity we will attempt to group the grounds alleged in support of the motion for new trial. As to items 1, 4 and 7, the defendant in effect alleges that there was insufficient evidence to support the verdict and that the verdict was contrary to the great weight of the evidence as it related to the cause of the loss in question and whether it was excluded by the terms of the defendant's policy.

For the reasons stated earlier in this opinion in connection with defendant's motion for judgment notwithstanding the verdict, and in view of the decision of the Court of Appeals in Fireman's Fund Insurance Co. of San Francisco v. Hanley, supra, we are satisfied that the evidence was more than adequate to support the jury verdict. We do not feel

that a citation of numerous cases would be of any benefit to the Court, or counsel, or to any reviewing court.

■ Items 15, 16 and 17, deal with alleged errors in connection with the admission and exclusion of evidence on the trial of this action. These items must be considered in the light of Rule 61, Federal Rules of Civil Procedure, which provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

There can be no question but that the issue of error in the admission or exclusion of evidence may be raised properly upon a motion for a new trial. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; General American Life Ins. Co. v. Central Nat. Bank, 6 Cir., 1943, 136 F.2d 821. Defendant claims that this Court erred in refusing to admit a report of the Corps of Engineers, entitled "Beach Erosion Control, Berrien County", dated November 12, 1956. It is defendant's contention that the report was admissible (1) as an official record under 28 U.S.C.A. § 1733:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

and Rule 44, Federal Rules of Civil Procedure:

"(a) An official record or any entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of this office. If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.

"(b) A written statement signed by an officer having the custody of an official record or by his deputy that after diligent search no record or entry of a specified tenor is found to exist in the records of his office, accompanied by a certificate as above provided, is admissible as evi-

·dence that the records of his office contain no such record or entry.

"(c) This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

or as a record or memorandum made in the regular course of business under 28 U.S.C.A. § 1732(a):

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

The record in question according to the witness Drew, who assisted in the preparation of the report, was prepared by representatives of the United States Corps of Engineers and submitted to the Congress.

Defendant cites E. K. Hardison Seed Co. v. Jones, 6 Cir., 1945, 149 F.2d 252, 256, where that Court held:

"Title 7 U.S.C.A. § 1607 authorizes the Administrator of the Federal Seed Act to cooperate with any State or its department agencies in carrying out the provisions of the Act. It will thus be seen that under the plain provisions of the Statute in question it was contemplated that State agencies were to be used in its administration. So, in testing the competency of the questioned evidence, the records of the laboratories of the Federal and State Governments are on an equal footing. A report of a public official is distinguished from a return of such official in that the latter is typically concerned ·with something done or observed by that officer, while the report embodies the result of the officer's investigation not originally occurring within his personal knowledge. But a report, if made under due authority is receivable in evidence on the same principle as an official return.

"Reports which are of a public nature and taken under competent authority to ascertain a matter of public interest are admissible in evidence against all the world. It is not essential to the admission of evidence of this nature that the inquiry should have been made by virtue of some judicial authority and by means of witnesses examined upon oath. It is sufficient if it was made by virtue of competent authority on behalf of the public and on a subject matter of public interest. Wigmore on Evidence, Third Edition, Vol. 5, Sec. 1670."

Attention, however, is called to Gilbert v. Gulf Oil Corp., 4 Cir., 1949, 175 F.2d 705, 710:

"Nor does the letter qualify under the 'official statement' or 'public document' exception to the hearsay rule. This is designed to obviate the constant attendance of public officers in court to prove routine matters, Wigmore, Evidence, (3d. Ed.,) § 1631, whereas in the instant case the signers of the letter were available as

witnesses and present in court. Furthermore, as pointed out in Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 572, 153 A.L.R. 156 'expressions of opinion and conclusions on causes and effects based upon factual findings are not always admissible as public records, especially when it is shown either that the conclusion or opinion which the statement purports to convey would not be admissible in evidence if tendered by the direct testimony of the maker, or if the denial of the right of cross-examination could result in the perversion of the rule of trustworthiness and reliability. See Kansas City Life Ins. Co. v. Meador, 186 Okl. 397, 98 P.2d 20.' See also, Illinois Power & Light Corp. v. Hurley, 8 Cir., 49 F.2d 681; Note 153, A.L.R. 156; 20 Am.Jur. § 1027; 1948 Cum.Supp. § 1027."

and Williamson v. Union Oil Co. of California, D.C.Colo.1954, 125 F.Supp. 570, 572, where the Court stated:

"As a general rule, where some enactment or law requires or authorizes a public official to make a certificate or written statement as to some matter or fact pertaining to, and as a part of, his official duty, such writing is competent evidence of the matter or fact therein recited. 32 C.J.S. Evidence § 626, p. 477; 20 Am.Jur., 'Evidence', Sec. 1023, pp. 861–2. This exception to the hearsay rule rests in part upon the presumption that a public officer charged with a particular duty has performed it properly, and upon the fact that public officers usually have no motive to suppress or distort the truth or to manufacture evidence.

"There are qualifications to the foregoing rule, as there are to most rules. Records, even by public officers, which concern causes and effects, involving the exercise of judgment and discretion, expressions of opinions or the making of conclusions are not admissible as public records. This principle is not universally applicable, but it seems a practical working rule. Commonwealth v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281; Steel v. Johnson, 9 Wash.2d 347, 115 P.2d 145; Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 572, 153 A.L.R. 156."

and see also Olender v. United States, 9 Cir., 1954, 210 F.2d 795, 801, 42 A.L.R. 2d 736.

A close examination of the record will clearly establish that the Court, on the trial of the cause, requested defense counsel to separate the report and ask for the admission of only those items which were relevant and material to the controversy before the Court. Upon the refusal of the attorney for the defendant, the Court ruled that a substantial part of the report contained hearsay and conclusions and that much of it was immaterial and the entire report was excluded after an opportunity had been offered to defendant's counsel to point out the portions which he desired to have in evidence.

In addition defendant also claims that the report was a business record within the meaning of 28 U.S.C.A. § 1732(a), which has been previously quoted, and cites in support Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 18 F.2d 934; Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467.

■ The same reasoning would apply to the exclusion of the evidence offered under this Rule as under the Official Record Rule heretofore stated. In any event the Court is satisfied that any alleged error did not affect the substantial rights of the parties since several witnesses were produced who testified to the "facts" contained in the report, including a Mr. Drew, who assisted in the preparation of the report and who gave his opinions on the trial of the cause as

in the report. Therefore, the Court rules that under the provisions of Rule 61 any error, which we are unable to find, was harmless error.

Defendant further alleges error on the part of the Court in admitting evidence of a conversation between William Hanley and William Allen, an insurance agent. This was not covered in the briefs of either party.

Defendant further alleges that the Court erred in not granting a motion for a mistrial when in response to a question relative to a neighboring house having been moved because of loss of ground from the fall of the bluff, the plaintiff, William Hanley, answered: "Yes, sir, and I know he collected insurance on it." The answer was immediately stricken from the record and the jury was carefully instructed that they were to disregard the answer, that it was in no way material to this controversy what another insurer had done since we were not fully familiar with the facts or the policy involved. Defendant claims that when any error such as described occurs during the course of a trial, such error is presumed to be prejudicial and grounds for reversal. This is not in accord with Rule 61, Federal Rules of Civil Procedure, nor is it in accord with the decisions of the Courts of the United States since the adoption of the Rules of Civil Procedure. We are not concerned with the decisions of the several states of the United States nor with the decisions of the courts of the United States prior to the adoption of the Rules of Civil Procedure.

In Palmer v. Hoffman, supra, the United States Supreme Court held at page 116 of 318 U.S., at page 482 of 63 S.Ct.:

"He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted."

To the same effect, see Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co., 10 Cir., 1949, 173 F.2d 844, 851, certiorari denied 337 U.S. 930, 69 S.Ct. 1495, 93 L.Ed. 1737, where at page 851 of 173 F.2d the Court of Appeals stated:

"Whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination. It is vested with a large discretion in determining such a question, and a judgment will not be disturbed on appeal unless a clear abuse of discretion appears."

See also Twachtman v. Connelly, 6 Cir., 1939, 106 F.2d 501.

In this Court's opinion, Evansville Container Corp. v. McDonald, 6 Cir., 1942, 132 F.2d 80, and Pierce v. United States, 6 Cir., 1936, 86 F.2d 949, relied upon by the defendant are not applicable to this case.

Citation of further authority seems to be of little consequence or value since the matter rests largely in the discretion of this Court, and this Court is satisfied that the answer was made spontaneously, without intent to prejudice the rights of the parties, and it was made after a long period of intense questioning by defense counsel.

As to the objections to the Court's charge as contained in Items 18 and 26 of defendant's motion, the Court is satisfied that the instructions about which complaint was made are clearly proper statements of the Laws of the State of Michigan. Fireman's Fund Ins. Co. of San Francisco v. Hanley, 6 Cir., 252 F. 2d 780, supra; Graham v. United Trucking Service, Inc., 327 Mich. 694, 42 N.W. 2d 848.

Defendant objects to the failure of the Court to instruct the jury that plaintiffs' loss in the event of recovery should be reduced by 25% under the apportionment clause of defendant's policy, which reads as follows:

"This company shall not be liable for a greater proportion of any loss

from any peril or perils included in this extended coverage than (1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder; (2) nor for a greater proportion than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss; except if any type of insurance other than fire with extended coverage or windstorm insurance applies to any loss to which this insurance also applies, the limit of liability of each type of insurance for such loss, hereby designated as 'joint loss,' shall first be determined as if it were the only insurance, and this type of insurance shall be liable for no greater proportion of joint loss than the limit of its liability for such loss bears to the sum of all such limits. The liability of this company (under this extended coverage) for such joint loss shall be limited to its proportionate part of the aggregate limit of this and all other insurance of the same type.

"The words 'joint loss,' as used in the foregoing, mean that portion of the loss in excess of the highest deductible, if any, to which this extended coverage and other types of insurance above referred to both apply."

In the "all physical loss" endorsement it is provided:

"This company shall not be liable for a greater proportion of any loss from any peril or perils included in this form than (1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or which would have covered the property except for the existence of this insur-

ance, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder, (2) nor for a greater proportion than the amount hereby insured bears to all insurance whether collectible or not, covering in any manner such loss, or which would have covered such loss except for the existence of this insurance; except if any type of insurance other than fire with extended coverage or windstorm insurance applies to any loss to which this insurance also applies, or would have applied to any such loss except for the existence of this insurance, the limit of liability of each type of insurance for such loss, hereby designated as 'joint loss,' shall first be determined as if it were the only insurance, and this type of insurance shall be liable for no greater proportion of joint loss than the limit of its liability for such loss bears to the sum of all such limits. The liability of this company (under this form) for such joint loss shall be limited to its proportionate part of the aggregate limit of this and all other insurance of the same type. The words 'joint loss,' as used in the foregoing, mean that portion of the loss in excess of the highest deductible, if any, to which this form and other types of insurance above referred to both apply."

At the time that the policy in suit was issued plaintiff had in effect three policies of insurance in companies other than the defendant. Those policies were extended fire insurance policies which did not cover the loss involved in this action.

Plaintiff contends that in the course of the negotiations for the issuance of the policy in suit defendant's agent, William Allen, represented to the plaintiff that he would take care of the cancellation of the policies in question upon issuance

of defendant's policy. In reliance upon this representation, which was not denied by Agent William Allen, plaintiff purchased defendant's policy of insurance. The agent failed to cancel the other policies, and defendant now wishes to take advantage of the failure of said agent to cancel said policies which was one of the bases upon which the plaintiff agreed to purchase the defendant's policy. Plaintiff takes the position that the defendant did not object to the charge of the Court in such manner as to comply with the provisions of the Rule that objections to instructions should be specific. Defendant takes the position that there was a proper objection. The Court is satisfied that the issue was not presented to the Court at the conclusion of the instructions in such manner as to warn the Court that error might have been committed in instructions to the jury. However, regardless of that point the Court is satisfied that the plaintiffs were justified in relying upon the Agent William Allen to cancel the policies in question as the agent for the defendant company. We are in accord with the contention of the plaintiffs that Allen, being a selling agent, had been clothed with apparent authority to perform such acts as were necessary to consummate the sale. We are satisfied that the matter comes within the ruling of the Supreme Court of Michigan in Atlantic Die Casting Co. v. Whiting Tubular Products, Inc., 1953, 337 Mich. 414, 421, 60 N.W.2d 174, 177, where the Michigan Supreme Court stated:

"In Michael v. Kircher, 335 Mich. 566, 570, 56 N.W.2d 269, 271, we had occasion to discuss the apparent authority of an agent to bind the principal. We there said:

"'* * * Where a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby. Richards v. Lowrie & Webb Lumber Co., 317 Mich. 42, 26 N.W.2d 590.

* * * * *

"'In 21 R.C.L. p. 856, it is stated:

"'"'The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination.'

"'"In Faber v. Eastman, Dillon & Co., 271 Mich. 142, 259 N.W. 880, the Court said:

"'"'It is elementary that persons dealing with an agent may rely on his apparent authority (Marx v. King, 162 Mich. 258, 127 N.W. 341), and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence. (Haines v. Leonard Warehouses, Inc., 199 Mich. 580, 165 N.W. 721; Kerns v. Lewis, 249 Mich. 27, 227 N.W. 727). This question was discussed at length by Mr. Justice McDonald, speaking for the court, in Maryland Casualty Co. v. Moon, 231 Mich. 56, at page 62, 203 N.W. 885, and the following from 21 RCL, p. 856, was quoted with approval:

"'"'"Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."'"

* * * * *

"'"'The general rule is that the powers of an agent are prima facie coextensive with the business entrusted to his care.' Grossman v. Langer, 269 Mich. 506, (510), 257 N.W. 875, 876."'"

We do not feel that the decision of the Court in House v. Billman, 340 Mich. 621, 66 N.W.2d 213, is applicable to this case since the representation of the agent in the instant case was one of the inducements for the issuance of the policy. Whereas, in the House case it was a change in the contract which had already been issued.

█ We are satisfied from all of the facts and circumstances that the matter was properly submitted to the jury, and that based upon the common usage and custom of the insurance business the Agent William Allen was acting within the apparent scope of the authority extended to him by the defendant company in agreeing to obtain the cancellation of the policies in question, and, therefore, the apportionment clause of the defendant's policy was not applicable as a matter of law.

█ Defendant alleges that the Court was in error in instructing the jury as follows:

"The defendant insurance company is as a matter of law held to have all factual knowledge and information which is in the possession of its authorized agent. You are instructed that in this case Mr. Allen was the authorized agent of the defendant insurance company, and any knowledge or information which Mr. Allen had concerning the location, condition or circumstances of the Hanley property covered by the policy in question, and all of the facts and circumstances of which he had knowledge concerning the cancellation of the earlier policy issued by the Fireman's Fund Insurance Company, is considered to be the knowledge of the defendant insurance company and is binding upon it, and as a matter of law is just the same as though that company and its officers were in full possession of all of such facts, circumstances, and information." (Trans. Vol. 3, pp. 1024, 1025).

"You are instructed that on each of these matters it is the burden of the defendant insurance company to prove by a preponderance of the evidence that the plaintiffs, or one of them, willfully, knowingly and with intent to defraud, concealed either of such circumstances from the defendant insurance company and from its agent; and also that neither the defendant insurance company nor its agent, William Allen, had knowledge of the falsity of such statements, or of the existence of the facts upon which such alleged statements were based." (Trans. Vol. 3, p. 1027).

A similar question was before Chief Judge Starr of this Court (140 F.Supp. 206) and before the Court of Appeals in Fireman's Fund Ins. Co. of San Francisco v. Hanley, supra, 6 Cir., 252 F.2d 780. Apparently the defendant is of the opinion that an agent may have a great deal of information about a certain subject obtained prior to the time or in another connection than while dealing with the policyholder at the time of the issuance of the policy, and defendant thereafter takes the position that such information and knowledge should be ignored and that the defendant company is chargeable only with the information given to its agent during the time when there are negotiations for the issuance of the policy.

Without citing numerous cases we feel that a proper statement of the law is contained in the American Law Institute Restatement of the Law of Agency, § 276, at page 616:

"Except as stated in Section 281, the time, place, or manner in which knowledge of an agent or servant is obtained is immaterial in determining the liability of a principal or master because of it."

Our opinion is exactly that of the editors who comment on the above Restatement provision at page 617:

**654**

"(a) Relevant knowledge may have been acquired by the agent before the time of his employment or after he becomes agent, either while acting for himself or for the principal. In any case, except where the knowledge is acquired confidentially (see Section 281), the important matter is not how the agent acquired it, but whether or not he has the knowledge at the time when it becomes relevant in his work for the principal. If he has the information in mind, the principal is bound, under the rule stated in this Section, equally where it was not acquired because he was acting as an agent, as where he obtained it as such agent. * * *."

The testimony of the agent William Allen affirmatively demonstrated that at the time of the issuance of the policy and the endorsement thereof in suit he had full knowledge of all the conditions which then prevailed on the bluff on the east shore of Lake Michigan in the St. Joseph area. The defendant company may have been mistaken in placing its confidence in that agent. This was not the fault of the plaintiffs.

An examinàtion of the transcript of the proceeding in the course of the trial of this cause, including the evidence, the charge of the Court, and the argument of counsel, satisfies this Court that a fair trial was had, that the jury was fully apprised of the claims of the respective parties and the evidence in support thereof, that the jury was properly instructed as to the law which should be applied to the evidence and the Court should state in conclusion that the verdict of the jury was exactly the conclusion which the Court would have reached had it been the finder of the facts.

For the reasons herein stated, orders may be entered denying defendant's motion for judgment notwithstanding the verdict and denying defendant's motion for a new trial.